61 So.2d 525 (1952)
RACHAL et al.
v.
TEXAS & P. RY. CO.
No. 7843.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1952.
Rehearing Denied December 10, 1952.
*526 Russell E. Gahagan and G. F. Thomas, Jr., Natchitoches, for appellant.
Frank H. Peterman and J. Charles Burden, Jr., Alexandria, for appellee.
Richard B. Williams, Natchitoches, for intervenor.
HARDY, Judge.
Plaintiff, individually and as natural tutrix of her two minor children, brought this suit for the recovery of damages resulting from the death of her husband, Edgar Rachal, in an automobile-train collision alleged to have been caused by the negligence of defendant railroad. Plaintiff prayed for trial by jury which returned a verdict in favor of defendant rejecting plaintiff's demands and judgment was signed accordingly, from which judgment plaintiff has appealed.
Consolidated for trial and for purposes of appeal were companion cases against this same defendant and in which the plaintiffs were Mrs. Ezella Rachal Desadier and Mrs. Pearl Delrie Vascocu, which cases are respectively Nos. 7844 and 7845 on the docket of this court, 61 So.2d 530; 61 So.2d 530.
The accident took place in Natchitoches Parish at the crossing of Louisiana Highway 432, which is a connecting road between the towns of Flora and Natchez, and the Texas & Pacific Railway tracks, on the 27th day of December, 1950, at about 1:00 o'clock P.M. A truck which was being driven south on Highway 432 by John Vascocu and occupied by Edgar Rachal and Raney Desadier, all three being employees of the Natchitoches Parish Police Jury, was struck by an eastbound train of defendant company, en route from Shreveport to Cypress, and all three occupants of the truck were instantly killed. Vascocu and his fellow employees had been engaged in loading lumber on the truck at a point a short distance from the intersection described. Vascocu drove the truck along a dirt road and entered gravel highway 432 at a point a few hundred feet north of the T. & P. crossing, where they turned to the right and proceeded south on Highway 432. The train, which was made up of a locomotive, water car and caboose, was approaching the crossing from the west. The railroad stop sign required by Louisiana statute is located on the west *527 side of the highway slightly more than 50 feet north of the tracks. For a distance of something less than 30 feet south of the sign the view of the track to the west was obscured by a high dirt bank, an abandoned sawmill structure, and, allegedly, by weeds and underbrush, all these obstructions being located on or partially on the defendant's right-of-way. However, for a distance of 22 feet north of the track there is an open and unobstructed view of the track to the west from the highway.
The allegations of negligence, both omission and commission, on the part of defendant and its train crew on which plaintiff relies, as set forth in her petition, are:
(a) Failure to have train under proper control;
(b) Driving train at an excessive rate of speed over a road crossing where it was known that a view of the track was obscured and where heavy vehicular traffic passed at all hours;
(c) Failure to sound a whistle or bell continuously from a point 300 yards from said crossing until the crossing was passed, in violation of LSA-R.S. 45:561;
(d) In allowing the view of the track at the crossing to become obstructed by brush and weeds and making it impossible "for persons driving or traveling in a southerly direction to see or observe a train coming from the west toward the crossing."
(e) In allowing the view of the track to be and remain obstructed by the high bank or cut, making observation to the west impossible, and by constructing and maintaining the track over the crossing in such manner as to impede, hinder and obstruct the safe and convenient use of the road in violation of Act 157 of 1910, LSA-R.S. 45:324.
(f) In failing to have the train under control "or bring it under control and stop it before crashing into the truck which defendant's agent saw or should have seen was in a perilous position."
(g) In failing to keep a proper lookout.
In her amended and supplemental petition plaintiff additionally urges the charge of negligence on the ground that defendant failed to provide some warning device in the nature of a barrier, an electrical system, or some other type of equipment for the purpose of warning travelers of the approaching trains despite the fact that to its knowledge the crossing was situated in a populous community and was heavily used by persons living thereabouts. Plaintiff urges that this failure to eliminate the obstructions to view or to install warning devices, or "slow their trains when approaching such an obstructed crossing" was negligence which proximately caused the accident.
It is to be observed that a number of these allegations of negligence are repetitive, and accordingly a discussion may be simplified by reducing them to the few pertinent and material charges which are recognized by counsel for plaintiff in brief and argument before this court and which are entitled to consideration in the light of the evidence developed on trial.
Counsel for plaintiff correctly concedes in brief that the right to recovery depends upon establishment, to the satisfaction of the court, that the defendant or its employees or agents failed to measure up to the standard of ordinary care or prudence required by the circumstances surrounding the accident. This statement indeed embodies the very crux of the matter and upon the determination of this proposition rests the solution of the issue presented.
The first of the surrounding circumstances or conditions which must be considered bears upon the nature and character of the community in the vicinity of the accident. It is earnestly contended by counsel for plaintiff that the site of the accident is in the heart of a somewhat thickly populated rural community. We do not think this fact is borne out by the preponderance of the testimony comprehended in the record. On the contrary it appears that the vicinity is what may be described and has been referred to in cases involving railway accidents as open country. It is quite true that there were a number of residents within a radius of a few hundred yards, but unfortunately for plaintiff's contention, it appears that most of these residents, that is the bulk of the population of the vicinity was centered in and about the small town of Flora, a place of a few hundred population. Flora *528 itself is a neighboring town or village some distance from the crossing which is here concerned, which crossing was known as Weaver's Spur. The preponderance of the testimony, including that of the witnesses on behalf of plaintiff, indicates to our minds that State Highway No. 432 was an ordinary and usual type of graveled country road connecting Flora and Cypress. Unquestionably there was a reasonable evidence of habitation in and near the highway but not to any such degree or extent as would justify the finding that the crossing was located in or near a thriving and populous community. Indeed, the testimony is conclusive on the point that the highway was regarded as being little used and traveled. Certainly it is clear to us that there was nothing about the location of the crossing which would in itself indicate the need for the extra precautions contended on behalf of plaintiff.
It is established that two other accidents, neither being of a serious nature, had occurred at the crossing, one in 1930, which involved a collision by one of defendant's trains with a mule and a cart, and another which took place in or about 1938, when the back end of a truck was struck by a train. These obviously rare and isolated instances, which occurred some 20 and 12 years respectively prior to the accident which is here at issue, would not indicate the presence of such an obvious danger and hazard as would lay any added responsibility or obligation upon the defendant.
Plaintiff complains that the train was being operated at an excessive rate of speed and was not under proper control. The speed of the train was variously estimated by different witnesses as being from 20 to 40 miles per hour. The testimony on this point, which was tendered on behalf of defendant, was given by several members of the train crew and by members of a section gang which was working on the track a short distance from the crossing. The testimony of these witnesses was in agreement as to speed, fixing the same at approximately 20 to 25 miles per hour. We think the members of the crew and workmen on the track were in a much better position and additionally were much more qualified by training and experience to make an accurate estimate of speed than were those casual witnesses some distance from the train who had neither particular reason, purpose nor qualification for observing and estimating the same factor.
Nor do we find merit in the charges that the warning signals were not timely and properly given. On the contrary the overwhelming preponderance of the testimony is convincing that the whistle was sounded in the customary and proper warning blasts over a distance of some 1200 feet before the train reached the crossing; that the bell began ringing at the same point and continued ringing continuously until after the train was brought to a stop following the collision, and, finally, that the headlight of the locomotive was burning, despite the fact that the accident occurred in broad daylight.
Plaintiff's counsel makes a point of certain minor discrepancies and variations in the testimony of the witnesses for the defendant. We do not think that any of these variations are of such nature or degree as would reflect upon the credibility of the witnesses, but rather we are of the mind that they are simply the ordinary and usual differences which naturally would be apparent in connection with the testimony of observers of the same accident who strive to tell the exact truth and who vary one from the other in their accounts only by reason of their divergent points of view.
There is no substantiation of the charges of negligence on the grounds of failure to keep a proper lookout and failure to have the train under such control as would permit it to be brought to a stop before crashing into the truck, which should have been observed to be in a perilous position. The members of the train crew were keeping a good lookout which is evidenced by the fact that the approach of the truck was perceived at the first possible moment, that is when the train was some 125 to 150 feet west of the crossing, at which time the truck was approximately 50 feet from the track. The fireman immediately shouted a warning to the engineer who instantaneously applied the emergency brakes. This action was taken notwithstanding the fact that the truck was moving at a very slow *529 rate of speed, estimated at some 10 miles per hour, and there was no real indication that it would attempt to cross the track in the path of the train. It is pointed out that the train was not brought to a stop until it was 700 feet or more beyond the crossing and that this fact in itself evidences the lack of control. It was carefully explained by members of the train crew that a bobtail train made up of a locomotive, water car and caboose, was more difficult to stop than a longer train made up of a number of freight cars, which fact is evident to anyone who is to any degree familiar with fundamental physical laws.
Finally, we come to a consideration of the one remaining ground upon which plaintiff relies for support of charges of negligence against defendant, that is, the permissive existence of the obstructions to view which have been hereinabove enumerated. Cited in support of plaintiff's contention is the case of Guillot v. Texas & P. Railway Co., 8 La.App. 143, wherein the court observed:
"We are also of the opinion that the defendant permitted its right of way at the crossing to grow up in Johnson grass and other weeds and that this also was negligence."
To the exact contrary counsel for defendant cites Daughdrill v. Texas & N. O. Railway Co., La.App., 20 So.2d 644, and Illinois Central Railway Co. v. Leichner, 5 Cir., 19 F.2d 118.
We have made a careful search for authorities on this point, both in our own and other jurisdictions. The generally accepted rule appears to be that the obstructions to view that are permitted by a railway company to exist on its right-of-way, such obstructions as are in nature similar to those here under contemplation, does not in itself constitute actionable negligence, that is, it is not negligence per se. The consequence is that railroads are held to a degree of caution commensurate with the added hazard or danger which results from the existence of these obstructions.
"The principle that if a crossing is unusually dangerous ordinary care requires the railroad company to meet the peril with unusual precautions, is particularly applicable where the dangerous condition results from obstructions to the view which prevent a traveler from seeing an approaching train until he is dangerously close to the track. In such a case, the railroad company has the duty of exercising caution commensurate with the situation to avoid collision with travelers on the highway, as by a less amount of speed, or by increased warnings, or otherwise * *." 44 American Jurisprudence, verbo "Railroads", Section 507, page 747; Wyatt v. Yazoo & M. V. Railway Co., 13 La.App. 632, 127 So. 479; Smith v. Texas & P. Railway Co., La.App., 189 So. 316.
Herein lies one of the explanations for the usual statutory requirements with respect to warning signals, for it is not enough that warning of the approach of the train be perceptible to visual observation, which is all that can be ascertained by view itself, but further that there is required the blowing of a whistle and the sounding of a bell which may by their sounds penetrate the consciousness and attract the attention of those approaching a crossing even though the view be impeded or obstructed. The theory of these precautions is embodied in the familiar "Stop, Look and Listen" warnings which are imbedded in an understanding, appreciation and consideration of almost every accident case involving a railroad. Obviously it is not enough simply to look, nor to listen, and therefore the traveler who ventures to effect a crossing of a railway track is enjoined not only to look, but also to listen, and finally to stop in order that he may make a careful examination of the track for the purpose of determining the possible approach of railway trains.
We are firmly convinced that all the facts upon which plaintiff necessarily relies in support of her claims must be without exception resolved against her contentions. The train was moving at what appears to us to be an unusually conservative rate of speed considering the fact that the crossing which was being approached was located in an open country; the warning signals of whistle and bell properly and timely given, and the burning of the locomotive *530 headlight were additional precautionary measures; a vigilant lookout was being made and upon discovery of the possibility of a collision every immediate emergency effort was made to bring the train to a stop, and, finally, the obstructions to view were not of sufficient nature, character and degree to constitute negligence under the existing circumstances, nor did their existence contribute to or cause the accident. We are further sustained in our conclusion by consideration of the fact that the finding of the jury is entitled to and should receive great weight.
Petition of intervention was filed herein by American Surety Company of New York, workman's compensation insurer of the Natchitoches Parish Police Jury. Intervenor generally adopted and reiterated the allegations of plaintiff's petition. The judgment was silent with reference to the intervention, but, of course, it follows that the claims of the intervenor were disallowed. In any event, it does not appear that the intervenor in this and the companion cases appealed from the judgment and as a result the intervention is not before this court.
Since our conclusion is in complete accord with that reached by the jury it follows that the judgment is correct, and accordingly it is affirmed at appellant's cost.