98 So.2d 273 (1957)
Milton M. BALLARD
v.
Victor M. PIEHLER and American Eagle Fire Insurance Company.
No. 4498.
Court of Appeal of Louisiana, First Circuit.
November 19, 1957.
*274 H. Alva Brumfield, Arthur J. Cobb, Jr., Nealon Stracener, Baton Rouge, for appellant.
Breazeale, Sachse, Wilson & Hebert, Baton Rouge, for appellee.
ELLIS, Judge.
This is a suit against the defendant and his public liability insurer for personal injuries sustained by the plaintiff when he was struck by the defendant's automobile.
The lower court dismissed the suit and plaintiff has appealed.
The accident in question here occurred about 4:45 on the afternoon of November 27, 1954 on U. S. Highway 190 about one-half mile west of Lottie in the Parish of Pointe Coupee. The day was clear and visibility excellent.
The plaintiff was driving a truck in an easterly direction on the said Highway when he reached a point about one-fourth of a mile east of the eastern end of the Atchafalaya Spillway Bridge. There a mattress fell from the truck, and upon discovering this, plaintiff backed his truck to a position slightly east of the point where the mattress lay on the highway, parked the truck on the south shoulder of the roadway, the truck still being headed in an easterly direction. The preponderance of testimony is that the truck was about one-half on the shoulder of the highway and one-half upon the highway. At this point the highway is a four-lane one, with two traffic lanes for eastbound traffic and two for westbound traffic. These lanes are separated by a neutral ground 6 feet, 8 inches in width. Each traffic lane is 10 feet wide and on each side of the highway there is a shoulder 8 feet in width.
*275 The plaintiff, by his own admissions, after parking his truck, stood on the running board of his truck to permit the passage of another eastbound truck. He stated he looked back along the highway in a westerly direction, could see clearly for a mile or more, saw no vehicle approaching, and proceeded to where the mattress was resting with one corner of it upon the neutral ground and the remainder on the inside eastbound traffic lane of the highway. He thereupon removed the mattress from the traffic lane and placed it entirely upon the neutral ground. The testimony is not clear or positive as to exactly what position upon the neutral ground the mattress was at this time. Plaintiff stated he then stood on the pavement immediately adjacent to the neutral ground, faced north and lifted the mattress to his right shoulder and turned or started to turn to his right, when he was struck by the defendant's automobile. He did not testify that he looked in a westerly direction along the highway and stated "I must have wrestled with the mattress longer than I thought."
Other than the plaintiff, the only eyewitnesses to the accident were the defendant, Piehler, and Mr. and Mrs. Perry, who, at the time of the accident, were following the defendant's car. Mr. and Mrs. Perry were also traveling eastward in the outside traffic lane and about the time they reached the end of the Spillway Bridge, or shortly before, Piehler, also traveling eastward, but in the inside lane, passed the Perry car and proceeded eastward about two car lengths ahead of it. Both Piehler and Perry testified they saw the parked truck and both reduced their speed since, because of its position, they would not pass it abreast or nearly abreast. Piehler, as well as Mr. and Mrs. Perry, testified they saw the truck and also saw the plaintiff standing on the neutral ground. Both drivers reduced their speed and the defendant began to sound his horn, and continued to give this warning signal. All three testified that when Piehler's vehicle was nearly to the point where the plaintiff was standing on the neutral ground he, the plaintiff, stooped and picked up something, stepping into the traffic lane. Although neither Perry nor his wife, who was a passenger in his car, saw the defendant's vehicle strike the plaintiff, they did see the plaintiff step into the traffic lane and realized the defendant was rapidly braking his car. Perry started braking his car but collided with the defendant's vehicle on its rear.
The record does not establish with any decree of certainty how far the defendant's car was from the plaintiff when he stepped into the lane of traffic. The defendant and Mr. and Mrs. Perry all stated the plaintiff stepped right in front of the Piehler automobile. None of these three undertook to fix the exact distance the defendant's car was from the plaintiff at the time plaintiff stepped in front of it, and of course the plaintiff did not attempt to fix this distance since he admitted he did not look toward the west but started to lift the mattress when he was struck. If he turned to his right of course he could not see the defendant's automobile, and his failure to observe oncoming traffic and determine whether he could safely cross the highway and place the mattress back upon the truck clearly constituted negligence upon his part. This negligence is not denied but plaintiff has invoked the doctrine of "Last Clear Chance" or "Discovered Peril", maintaining the defendant saw his peril and could have, by reasonable care, avoided striking him.
Of course, the invocation of this doctrine presupposes negligence upon the part of the person injured since, in effect, this negligence is admitted, but it is charged the other party could, regardless of the negligence of the plaintiff, have avoided the accident. See Bagala v. Kimble, 225 La. 943, 74 So.2d 172; Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165; Dupuy v. Veazey, La.App., 63 So.2d 756
*276 In Brown v. Louisville & N. R. Co., D.C., 135 F.Supp. 28, affirmed 5 Cir., 234 F.2d 204, and Segreto v. American Auto. Ins. Co., D.C., 137 F.Supp. 194, affirmed 5 Cir., 239 F.2d 641, the essential elements of this doctrine are set forth. There are, first, that the plaintiff be in a position of peril from which he is unaware or unable to extricate himself, second, that the defendant be in a position where he should have or actually did discover the plaintiff's peril and, three, that at such time the defendant could have, with the exercise of reasonable care, avoided the accident. All three of these elements must be present before the doctrine can be applied.
A late Court of Appeal case, Maryland Casualty Co. v. Allstate Insurance Company, 96 So.2d 340 (Second Circuit) has discussed the doctrine of "Last Clear Chance" or "Discovered Peril" and it sets forth the same requisites as are found in the two Federal cases just cited. This case notes the fact that our jurisprudence was broadened in Rottman v. Beverly, 183 La. 947, 165 So. 153, to include those types of cases where the driver of a car did not see but could have plainly seen plaintiff's peril if he had been looking. Now a defendant might be held liable if, under the circumstances, he should have seen the position of the plaintiff. The former cases held the peril must have been discovered. The Maryland Casualty Co. case went on to cite the Bergeron case, stating the following [96 So.2d 344]:
"In Bergeron v. Department of Highways, 1952, 221 La. 595, 60 So.2d 4, Justice LeBlanc noted that testing the ability of a motorist to avoid an accident involves calculation of: the rate of speed, the time it takes to react to an emergency, and apply the brakes; as well as a determination of the distance in which the vehicle can be brought to a stop, traveling at the given speed. The resulting conclusions which may be arrived at are based principally on assumptions, the difference being one of seconds in the matter of time, and of a few feet only in the matter of distance. He then quoted with approval from Hutcheson v. Misenheimer, 169 Va. 511, 194 S.E. 665, 667:
"`The doctrine of the last clear chance is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application.'
"The soundness of the foregoing statement is impressive and we hesitate in cases where the last clear chance doctrine is relied upon to relieve a party of his negligent acts except when opportunity presented to the other party to avert the accident is manifest. Therefore, it has been a rule which has often been followed in our courts that when a pedestrian moves precipitantly from a point of relative safety into the path of a motor vehicle at a moment when it is too late from both point of time and distance to do anything to circumvent an impending accident, the pedestrian may not avail himself of the clear chance doctrine. Bailey v. Reggie, La.App. 1945, 22 So.2d 698; Conway v. Serio, La.App.1950, 47 So.2d 126; Kimble v. Airco Refrigeration Service, Inc., La.App.1952, 57 So.2d 788; Hall v. Alfortish, La.App.1952, 60 So.2d 723; Dupuy v. Veazey, La.App.1953, 63 So.2d 756; Moore v. Moran, La.App. 1954, 74 So.2d 767."
The only issue here is whether the defendant discovered or should have discovered a perilous position of the plaintiff in time to avoid the accident by the exercise of reasonable diligence and care. It is extremely difficult if not impossible to determine from the record exactly how far away the defendant was from the plaintiff when the situation of peril was created. From all of the evidence the trial court concluded this distance to be about 70 feet and that at the time the defendant's vehicle was traveling at the approximate speed of 40 *277 miles per hour or 58 feet per second. At this speed the defendant could not have brought his car to a stop before reaching the plaintiff no matter what care he exercised. Considering all of the circumstances, we cannot say the lower court was incorrect when it found the defendant did everything in his power to avert the accident. If the plaintiff was merely standing upon the neutral ground it seems the defendant could safely assume he was not going to cross immediately in front of his vehicle, and there was no peril presented until he made some move which was apparent or should have been apparent to the defendant to indicate he intended to cross his path.
In connection with the duty placed upon a defendant in such a situation language used in Arnold v. Reuther, 92 So.2d 593, is apposite. There, at page 596, the Court of Appeal, Orleans, stated:
"A human being, no matter how efficient, is not a mechanical robot and does not possess the ability of a radar machine to discover danger before it becomes manifest. Some allowance, however slight, must be made for human frailties and for reaction, and if any allowance whatever is made for the fact that a human being must require a fraction of a second for reaction and then cannot respond with the mechanical speed and accuracy such as is found in modern mechanical devices, it must be realized that there was nothing that Reuther, a human being, could have done to have avoided the unfortunate result which the negligence of Mrs. Arnold brought upon herself."
Unless it can be determined from the record that the defendant realized what the plaintiff intended to do, or saw or should have seen, something which would have made a reasonable person believe the plaintiff was in peril or was going to cross the highway and place himself in peril, the doctrine sought to be invoked cannot be applied here.
Although the defendant saw the plaintiff some time before the accident, at this time the plaintiff was in no peril as evidently he was on the neutral ground. The first time the defendant could have discovered the plaintiff was in any peril was when he turned and started or staggered onto the highway.
All of the elements necessary for the doctrine of "Discovered Peril" or "Last Clear Chance" to be applied must be affirmatively shown, and since there is no such showing or proof upon the part of the plaintiff, for the reasons hereinabove set forth and upon the authorities cited, the judgment of the district court is affirmed.