YARRUT, Judge.
Plaintiff is the subrogee of its insured whose automobile was damaged in a collision with a diesel switch engine of Defendant.
From a judgment in favor of Plaintiff for property damage of $566.50, Defendant has appealed.
Plaintiff charges Defendant with the following acts of negligence:
“a. In failing to maintain a proper lookout;
“b. In failing to keep the defendant’s locomotive under proper control;
“c. In the engineer of said locomotive failing to sound any horn, whistle, bell or other warning device before attempting to cross said street;
“d. In failing to bring said locomotive to a stop and to first ascertain that the way was clear and safe for said engine to cross said street, particularly since said engineer knew or should have known that the street in question was the only means of ingress to the dock area and that because of the bright lights in the particular area involved persons traveling on said street towards the river could not see a train or other vehicle approaching;
“e. In failing to have a brakeman or a flagman out ahead of the locomotive before the engineer attempted to operate same across said street;
“f. In failing to have a watchman or guard present at said crossing to warn of the approach of said locomotive.”
Defendant, after a general denial, charges Plaintiff’s insured with the following acts of negligence:
“a. In failing to stop his vehicle in obedience to a railroad crossing sign, in violation of Section 38-97 of the Traffic Ordinances of the City of New Orleans, being Ordinance No. 828MCS Code of the City of New Orleans, 1956, as amended by Ordinance No. 1434-MCS;
“b. In attempting to beat the switch engine across the crossing;
“c. Failing to heed the whistle and bell of the switch engine and stop his vehicle;
“d. In failing to look and observe that it was safe to proceed across the railroad track before attempting to do so;
“e. In failing to see a large switch engine, with headlamp on, bell ringing, and whistle blowing, which was fully illuminated by the arc light in the area;
“f. In traveling at a speed of approximately thirty miles per hour which is in excess of the speed which a reasonable and prudent man would travel upon crossing a railroad intersection.”
Defendant, alternatively," charges Plaintiff’s insured with contributory negligence.
The accident occurred in New Orleans on January 12, 1961, about six o’clock in the morning, in the intersection of Calliope St. and the railroad switching yard on the *49 river front. Plaintiff’s insured was on his way to work on the docks, and the switch engine was crossing Calliope St. on its way downtown.
The switching yard is about 300 feet wide running along the riverside docks. Eleven or more parallel railroad tracks traverse the area. Defendant’s track was the fifth from the point where Plaintiff’s insured entered, and was the only track with a “Railroad Crossing” sign. Plaintiff’s insured was thoroughly familiar with the area, having crossed it daily on his way to work on the docks many times.
The switch engine had already passed Calliope St. when the engineer observed a freight train approaching him on the same track. It was necessary for him to back up and he promptly proceeded to back up, re-crossed Calliope St. traveling four to five miles an hour, when the collision took place. The engine crew of four testified the area was well-lighted, the “headlight” on the rear of the cab was burning, whistle blowing and bell ringing. They saw Plaintiff’s insured approaching about 150 feet away, traveling about 25 miles per hour. The engine was moving about four miles per hour. The engine and automobile reached the point of collision at the same time, the automobile running into the side of the engine.
There were no buildings or railroad traffic to obstruct Plaintiff’s vision. He testified he did not see the engine’s headlight, nor hear its whistle or bell. The reason was that, since the weáther was cold, he had closed his windows and was listening to his radio.
The testimony of Plaintiff’s insured makes it clear to us that his conduct was the sole and proximate cause of the collision, per the following interrogation:
“Q. Did you look to your right before crossing these tracks?
“A. No, I didn’t look.
******
“Q. And you did tell me a moment ago, as you approached this track, you didn’t look to your right?
“A. No, there was nothing to prompt me to look that way.
******
“Q. You did not apply your brakes then, prior to striking the locomotive ?
“A. I didn’t see him. If I had seen him, I would have stopped.
“Q. Were you looking for him, looking for trains in this area?
“A. Not in general.
“Q. In other words, is it fair to say you were crossing about a block of railroad tracks and you weren’t looking for any locomotives?
“A. Well, usually that time of morning, if locomotives passing, they sound their horn or usually have lights on or you see them, something like that, but otherwise, I mean, you don’t be coming to each railroad track and stopping, Christ’s sakes, you never get to work.
“Q. In other words, you would say that at this time of morning, there’s not usually much railroad traffic in that area, is there?
“A. No, there isn’t.
“Q. So, assuming that this was a normal morning and that there was not much railroad traffic, if any at all, you just proceeded across the tracks without looking?
“A. To my work, yes, sir.”
While we find no failure on the part of Defendant railroad to do its duty but assuming, arguendo, that it failed in some particular, Plaintiff’s insured was not excused from using his sense of sight and hearing before approaching the railroad crossings. Whenever the use of such senses will enable a person to avoid danger, his *50 resulting injury is conclusive evidence of negligence, without reference to the railroad’s failure to perform its duty. Tucker v. Illinois Cent. R. Co., 141 La. 1096, 76 So. 212; Hanks v. Arkansas & Louisiana Missouri Ry. Co., La.App., 62 So.2d 139.
Plaintiff’s insured’s negligence is accentuated here because, in closing his windows and listening to his radio, he soundproofed himself from hearing the engine’s whistle and bell, or seeing its headlight. To avoid a few moments cold air, he closed his windows and subjected himself to what could have been a fatal collision.
For the reasons assigned, the judgment of the lower court is reversed, and Plaintiff’s suit dismissed, at its cost in both courts.
Reversed.