145 So.2d 138 (1962)
Edward J. HYMEL et al.
v.
TEXAS & NEW ORLEANS RAILROAD COMPANY et al.
No. 735.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
Rehearing Denied October 15, 1962.
Certiorari Denied November 27, 1962.
*139 John E. Fleury, Robert I. Broussard, Gretna, Chaffe, McCall, Phillips, Burke & Hopkins, Harry McCall, Jr., New Orleans, for defendants-appellants.
James P. Vial, Leon C. Vial, III, Hahnville, for plaintiffs-appellees.
Before YARRUT, MARTINEZ and RICHARDSON, JJ.
YARRUT, Judge.
Plaintiffs-Appellees are the parents of an 18-year old college boy who was killed in an accident when the automobile he was driving was hit at a railroad crossing on September 16, 1959, about 7:30 o'clock A. M., at the Barton Avenue crossing, near Boutte, St. Charles Parish, Louisiana.
Defendants-Appellants are the Railroad and its then operating engineer.
From a judgment in favor of Plaintiffs-Appellees, each for $6000.00, plus $2190.31 automobile damage and funeral expenses, for the loss of their son, against Defendants in solido, the latter have taken this appeal.
Plaintiffs charge that the death of their son was due solely and only to the negligence of Defendants in not keeping a proper lookout and in not having the passenger train under proper control; in failing to keep the crossing in a safe and proper condition; to have signal lights or proper signals at the crossing; to have the weeds on both sides of the crossing kept cut; to have proper foundation for the crossing; to keep the crossing in proper repair; and to give proper warning of the oncoming train.
Defendants denied any negligence on their part and, alternatively, pleaded contributory negligence of Plaintiffs' son, in that:
"1. He failed to stop, look and listen before crossing the track;
"2. In failing to heed the signals the burning headlights on the engine, ringing of the locomotive bell and blowing of the whistle, he failed to use his senses of sight and hearing, he failed to stop, look and listen before crossing the track; and
"3. In carelessly and negligently driving, said automobile in the front of defendants' oncoming passenger train at a time when it was not physically possible to have stopped the train in time to have avoided the accident; all of which failures on the part of the driver were the proximate cause of the accident and death of the decedent."
*140 Defendants then cite LSA-R.S. 45:563, which places upon the person approaching a railroad track the duty to stop, look and listen before proceeding upon the railroad tracks. It is evident that Plaintiffs' son failed in these duties.
Photographs offered in evidence by Defendants, and the supporting testimony, clearly establish that a "Railroad Stop" sign was erected about 50 feet from the crossing, in full view of any motorist approaching.
Mr. Allen, fireman, seated on the left of the engine as it headed towards New Orleans from Lafayette, testified that, when he first saw decedent's vehicle approaching, it was proceeding at a slow rate of speed, about 12 to 15 miles and "coming up slow." From the slow speed of the vehicle, and the fact that a "Stop Sign" was at the crossing, the engine crew had the right to assume decedent's vehicle would stop before attempting to cross the tracks.
Regarding Plaintiffs-Appellees' charge that the overgrown weeds near the crossing obscured their son's vision, and thereby shifted the burden of caution on the Railroad, our Supreme Court, in Delta Fire & Casualty Company v. Texas & Pacific Railway Co., 229 La. 710, 86 So.2d 681, found that the driver of the automobile involved was proceeding at about 13 to 14 miles per hour through a sharp turn, which prevented his seeing a train proceeding across or towards the crossing. A "Stop Sign" was at the intersection. Plaintiff argued that his view of the crossing was obscured by the difficulty he encountered in negotiating the sharp turn. The court stated:
"If the negotiation of the sharp turn obscured his vision, all the more reason to exercise caution and be certain that no train was approaching. * * * even if the record justified a holding that the train crew should have noticed the truck and trailer before it reached the crossing, they would have been entitled to assume that the truck driver would comply with the statutory law and jurisprudence of this State and stop before undertaking to negotiate the crossing, as there was nothing so unusual about the truck's approach as to place ordinarily prudent men on notice that it was in distress."
The jurisprudence is uniform that those in charge of railroad trains may presume that an individual or vehicle approaching a crossing will stop in time to avoid an accident; and the crew is not required even to attempt to stop unless there is reason to believe the approaching motorist is unaware of the oncoming train or does not intend to stop; and a motorist must exercise every sense to ascertain if it is safe to cross. Calvert Fire Ins. Co. v. Texas & P. Ry. Co., La.App., 55 So.2d 693; Stelly v. Texas & N. O. R. Co., La.App., 49 So.2d 640; Bailes v. Texas & P. Ry. Co., La.App., 59 So.2d 509; Leger v. Texas & P. Ry. Co., La.App., 67 So.2d 775; Matthews v. New Orleans Terminal Co., La.App., 45 So.2d 547; South Texas Lloyds v. City of New Orleans by and through the Public Belt Railway Commission of the City of New Orleans, La. App., 142 So.2d 47.
Assuming arguendo, that decedent could not see the train coming, he should have heard the approach of the train, as four disinterested witnesses heard the bell and whistle when the train was quite a distance from the crossing.
Even if there were obstructions such as to prevent decedent's being able to see down the tracks to his right as he proceeded towards the tracks, the greater duty was placed upon him to ascertain there were no trains in the vicinity. Hutchinson v. Texas & N. O. R. Co., La.App., 33 So.2d 139; Barnhill v. Texas & P. Ry. Co., 109 La. 43, 33 So. 63; Calvert Fire Ins. Co. v. Texas & P. Ry. Co., La.App., 55 So.2d 693; Stelly v. Texas & N. O. R. Co., La.App., 49 So.2d 640.
Plaintiffs also rely on McFarland v. Illinois Central Railroad Company, La.App., *141 122 So.2d 845; and Simon v. Texas & New Orleans Railroad Company, La.App., 124 So.2d 646.
In the McFarland case, the accident happened at a crossing within the municipal limits of the town of Denham Springs. Here the accident happened on a rural road. No testimony was introduced, except that of the members of the train crew, that the train whistle and bell were sounding when it approached the crossing. The court was particularly impressed there with the testimony of a witness that he crossed the tracks immediately ahead of the decedent, and neither saw nor heard the approach of the train. In the McFarland case no witnesses testified the train was blowing its whistle or ringing its bell a considerable distance from the crossing; while in the case here, four independent witnesses heard the whistle of the train long before the train reached the crossing.
In the Simon decision, supra, the case was heard by a jury. Although the train crew testified that they sounded the whistle and bell, five other witnesses testified they did not hear the train whistle or bell, except simultaneously with the collision.
In this case, one disinterested witness, riding on U. S. 90 parallel to the train, heard the horn, turned to his left, and saw the train, and continued to hear the whistle or horn as the train approached and reached the crossing. Another disinterested witness heard the whistle of the train a considerable distance up the tracks. Another witness testified that, when he first heard the whistle of the train, decedent's car was 50 feet from the tracks. One of them estimated the train was three-quarters of a mile, to a mile, from the crossing when he first heard the whistle.
We do not consider the above cases apropos as are the following cases:
In Rachal v. Texas & P. Ry. Co., La.App., 61 So.2d 525, the suit was brought alleging acts of negligence on the part of the defendant-railroad, including allowing the view of the tracks at the crossing to become obstructed by brush and weeds; and in failing to sound a whistle or bell. The crossing was in rural country. Decedent's truck was obscured when the train was from 125 to 150 feet from the crossing, at which time decedent's truck was approximately 50 feet from the track. The fireman immediately shouted a warning to the engineer, who instantaneously applied the emergency brakes. In the case here, decedent's car was about 50 feet from the track. The fireman on Defendant's train applied the emergency brakes when the train was about 200 feet from the crossing. In the Rachal case, the court cited the jurisprudence that the fact there are obstructions on the railroad right-of-way does not, in itself, constitute per se negligence. Hence, railroads are merely held to a degree of caution commensurable with the added hazard or danger which results from the existence of these obstructions. Guidry v. Texas & N. O. Ry. Co., La.App., 56 So.2d 611; Homeland Ins. Co. v. Thompson, La.App., 12 So. 2d 62.
Under the jurisprudence and facts of this case we cannot find that Defendants were guilty of any primary negligence, but assuming, arguendo, that they were, Defendants' alternative plea of deceased's contributory negligence would completely bar Plaintiffs' recovery. Thompson v. Morgan, 167 La. 335, 119 So. 69.
From the entire record we must epitomize this picture: In a rural area there is an embanked railroad track, intersected by a country road on which, 50 feet from the track, is a sign warning approaching motorists to stop before crossing, clearly visible to any observing motorist. There was underbrush and weeds near the intersection, but not sufficient to screen an oncoming train from a motorist exercising even ordinary vigilance.
The train consisted of a Diesel engine and nine passenger cars, with a crew consisting *142 of an engineer with 45, and a fire man with 18 years' experience; along with a brakeman, traveling about 65 miles an hour.
While the train was 200 feet from the crossing the engineer and fireman saw the approaching motorist traveling about 10 to 15 miles an hour, and believing, as they had the lawful right, that he would stop at the crossing, continued on at the same speed, until within 25 feet of the crossing. Realizing then for the first time that the motorist would not stop, but was proceeding across the track, the fireman applied the emergency brake to avoid the collision, without avail.
If railroad trains in the rural areas are required to slow down at every crossing, and to make emergency stops to avoid collisions with approaching motorists, countless passengers and crew members could very well suffer the loss of life and limb, and the railroads subjected to countless and expensive litigation.
Neither the law nor the jurisprudence puts this intolerable burden on railroads.
We are constrained to disagree with the District Judge that Plaintiffs' son met his tragic death as the result of Defendants' negligence, and not by reason of the son's negligence in entering upon the railroad tracks in the face of the oncoming train, without first stopping, looking and listening. Had he done so, this sad tragedy would not have occurred. Railroads are not the insurers of pedestrians or motorists, and may only be cast in damages for negligence, which we find absent here.
For the reasons assigned, the judgment of the District Court is reversed, and there will be judgment in favor of Defendants-Appellants and against Plaintiffs-Appellees, dismissing the latters' suit, at their cost in both courts.
Reversed and rendered.