181 So.2d 280 (1965)
John SULE
v.
MISSOURI PACIFIC RAILROAD COMPANY, and New Orleans Public Belt Railroad.
No. 1927.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1965.
Rehearing Denied January 10, 1966.
Writ Refused March 1, 1966.
*281 Hattier, Schroeder & Kuntz, Herman M. Schroeder, New Orleans, for plaintiff-appellee.
Phelps, Dunbar, Marks, Claverie & Sims, J. Barnwell Phelps and Peter G. Burke, New Orleans, for defendant-appellant.
Eugene J. Gomes, Jr., New Orleans, for Continental Cas. Co., intervenor-appellee.
Before YARRUT, SAMUEL and HALL, JJ.
SAMUEL, Judge.
This is an action to recover damages for personal injuries sustained by plaintiff as a result of a collision between defendant's train and a mobile crane being operated by plaintiff. Transportation Insurance Company, compensation insurer of plaintiff's employer, intervened for workmen's compensation benefits it had paid plaintiff. After the suit had been filed plaintiff dismissed his action against one of the two defendants, New Orleans Public Belt Railroad, as of nonsuit. The remaining defendant, Missouri Pacific Railroad Co., hereinafter referred to as "defendant", denied negligence on the part of its employees and, alternatively, pleaded contributory negligence on the part of plaintiff. The case was tried to a jury on two occasions. After one mistrial, a verdict and judgment were rendered in favor of plaintiff in the amount of $19,788.73 and in favor of intervenor in the amount of $3,211.27. Defendant has taken this suspensive appeal therefrom.
The undisputed facts are as follows:
The collision occurred at approximately 8 a. m. on October 12, 1961, on a railroad crossing at the river end of Louisiana Avenue in the City of New Orleans. The crossing consisted of a complex of five tracks paralleling the bank of the Mississippi River. There was a large warehouse on the northwest corner and a series of siding tracks on the northeast corner. The first track from the north, that is the land as distinguished from the river side, was a service track for the warehouse. The second track from the north was the westbound main line of the Public Belt Railroad. *282 The third track from the north was the eastbound main line of the Public Belt and it is this third track upon which defendant's train was traveling. A sketch introduced in evidence shows this third track ran in a straight line westerly from Louisiana Avenue for a distance in excess of 2,600 feet. The two remaining tracks were south of the Public Belt tracks. At the time of the accident the weather was clear and dry and a public service bus was stopped on the first track near the warehouse.
Plaintiff, who was on Tchoupitoulas Street proceeding west, was driving a 30 ton mobile crane, the boom of which extended out 25 feet in front of the body of the vehicle and upward 13 feet off the ground. The mobile crane was an unwieldy, slow vehicle capable of obtaining a speed of 24-25 miles per hour only after prolonged acceleration. Plaintiff was in the driver's seat located in a cab on the left side of the mobile body. To his right was the lower or base portion of the boom. Upon reaching Louisiana Avenue plaintiff turned left, or south, towards the river. He was being followed at a distance of about 10 feet by a loaded tractor-trailer truck. The vehicles were on their way to a place, across the tracks on the river front, frequently used by them for loading and unloading purposes. The crane was to unload the tractor-trailer there. Plaintiff had driven across the track complex on numerous occasions over a period of years and he was thoroughly familiar with the crossing and the area.
The train, consisting of 64 freight cars being pulled by three diesel engines, was proceeding in an easterly direction. The first of the train's three engines struck the rear tandem wheel of the mobile crane as the latter was attempting to complete its crossing of the track. The only evidence contained in the record relative to an emergency stop by this particular train is to the effect that a distance of approximately 500 feet was required in order to make such a stop. An emergency stop was a dangerous maneuver in that it involved possible injury to the train crew and probable damage to the freight being carried and to the train itself.
Although many witnesses testified during a somewhat lengthy trial, only four of these were eye witnesses to the accident: the engineer and fireman of the train, defendant's witnesses; and the plaintiff himself and the truck driver, who testified on behalf of the plaintiff.
The testimony of the two defense eye witnesses was to the following effect: The train was proceeding at a speed of 8-12 miles per hour (there is no complaint that this exceeded the lawful rate of speed). The engine's horn was blowing and its bell was ringing, both continuously for a distance of approximately 400 feet before it reached the crossing. The engineer, who was on the right side of the cab, first became aware of the crane when it was approximately 150 feet away. He saw the end of the boom as it came out from behind the stopped bus, but only momentarily due to the fact that the body of the engine then blocked his view in that direction. He immediately alerted the fireman who saw the boom at about the same time. When the fireman realized the crane was not going to stop he shouted a warning to the engineer and the latter applied the brakes for an emergency stop approximately 80 feet from the point of impact.
The truck driver testified: The mobile crane stopped momentarily at the tracks to change gears in order to make the slight upgrade. This witness intended to go around the crane at that time in order to arrive at their destination before the crane did. He proceeded to do this but saw the train and heard its bell ringing when the train was approximately 20 feet away. He applied his brakes and stopped before reaching the tracks on which the train was traveling.
Plaintiff testified: The bus had pulled upon the first track next to the warehouse as he made his left turn. He stopped at *283 the track (plaintiff said "probably" on the first track) and looked in both directions. To stop further back would have served no purpose because he could not have seen around the bus. He remained in a stopped position from fifteen seconds to one minute and at that time the forward part of the boom extended over the second track but not over the third, the latter being the track on which the train was traveling. He looked in both directions but saw nothing and heard nothing. He started across on the slight incline and then saw the train when it was approximately 250 feet away. At that time the boom was over the third track, he had insufficient time to back up, and he "gunned" his motor in an attempt to get safely across. He managed to attain a speed of 4 or 5 miles per hour. We gather from plaintiff's testimony that this is the maximum speed he could expect to attain under the circumstances and in the distance involved.
While counsel have argued the issues of whether or not there was negligence on the part of the railroad, quantum and last clear chance, and counsel for the defendant additionally has argued alleged misconduct before the jury concerning prior statements made by plaintiff and his eye witness, we find it necessary to discuss only the questions of (1) plaintiff's negligence and (2) last clear chance. For even accepting the testimony of plaintiff and his eye witness as true, we are satisfied that (1) plaintiff was guilty of negligence which proximately caused the accident and which bars any recovery by him or by the intervenor, regardless of whether or not there was negligence on the part of defendant, and (2) the doctrine of last clear chance is not applicable.
The present Louisiana Highway Regulatory Act, Art. 310 of 1962, had not been enacted on October 12, 1961, the time of the occurrence of the collision in the instant case. The pertinent statutory law in effect at that time was LSA-R.S. 32:243, subd. A. That statute was applicable to city streets as well as highways, and therefore to this case, in view of Section 1(8) of the statute defining the word "highway" as "every way or place of whatever nature open to the use of the public for the purpose of vehicular travel". See Pannell v. Consolidated Parcels, La.App., 164 So. 167. The statute provided:
"It shall be the duty of every person operating, or permitting to be operated, a vehicle, when approaching a grade crossing of a public highway with any railroad or tramway, to bring such vehicle to a complete stop in such a manner and for such time as to enable the operator to observe the approach of trains or cars, by looking up and down the track in both directions and by listening therefor, before proceeding. In the event it is impossible so to do, then such persons shall proceed only with the greatest caution and at their peril." LSA-R.S. 32:243, subd. A.
Our settled jurisprudence is that, in negotiating a railroad crossing, the driver of a motor vehicle must use his senses of sight and hearing for possible oncoming trains; he is burdened with the responsibility of seeing and hearing that which he might and could have seen and heard; he is required to use such care as is commensurate with the existing danger; and, if his view of the right-of-way is obstructed, he must use a higher degree of caution. Jackson v. Cook, 189 La. 860, 181 So. 195; Tucker v. Illinois Cent. R. Co., 141 La. 1096, 76 So. 212; Bertrand v. Missouri Pacific Railroad Company, La.App., 160 So.2d 19; Glisson v. Missouri Pacific Railroad Company, La.App., 158 So.2d 875; Hanks v. Arkansas & Louisiana Missouri Ry. Co., La.App., 62 So.2d 139; Rachal v. Texas & P. Ry. Co., La.App., 61 So.2d 525.
With regard to the above quoted LSA-R.S. 32:243 A requirement that a motorist must bring his vehicle to a complete stop at a railroad crossing, our jurisprudence is to the effect that, unless the *284 circumstances require such precaution, he need not come to a complete stop before crossing provided he has his vehicle under such control as to be able to stop immediately and has exercised due care in looking and listening for an approaching train. See Glisson v. Missouri Pacific Railroad Company, supra; Simon v. Texas & New Orleans Railroad Company, La.App., 124 So.2d 646; Robertson v. Missouri Pac. R. Co., La.App., 165 So. 527.
In the instant case plaintiff was driving a slow, unwieldy vehicle, the 25 foot extending boom of which made it impossible for him to observe approaching traffic at crossings or intersections prior to the time the tip of the boom extended into such crossings or intersections, and his view of the right-of-way was obstructed by the warehouse, by the stopped bus and, to some apparently small extent, by the base and lower portion of the boom. He was under a duty to exercise a high degree of caution. Despite these facts, according to his own testimony, plaintiff stopped and looked but saw nothing and heard nothing. He did not see the train until he was again in motion and until the boom had extended over the track on which the train was traveling. Whether he stopped and looked when in a position where he could not see because of the obstructions, or when his view was not so obstructed and he simply failed to see what he should have seen, is immaterial; the result is the same. He also failed to hear the ringing bell of the engine which his own witness, the truck driver, did hear. Under the circumstances he should have driven much more carefully. It would have been a simple matter, for example, for him to permit the truck driver to proceed ahead of him so as to determine whether or not a train was approaching, and this is especially true in view of the fact that the truck intended to pass the crane in order to arrive at their destination before the crane. We are of the opinion that plaintiff was guilty of gross negligence.
The doctrine of last clear chance or discovered peril is not applicable in the instant case for the reason that one of the necessary elements of that doctrine is absent. The necessary element to which we refer is that the one against whom the doctrine is invoked must have had the means of avoiding the accident by the exercise of reasonable care. Maryland Casualty Co. v. Gulf, Mobile and Ohio R. Co., La.App., 157 So.2d 302; Hanks v. Arkansas & Louisiana Missouri Ry. Co., supra.
Here, assuming but not deciding that there was negligence on the part of the train's operators, those operators did not have the means of avoiding the accident by the exercise of reasonable care. The train could not have been brought to a stop, even an emergency stop, within the distance involved. Plaintiff testified he first saw the train as he started to negotiate the slight incline of the crossing. At that time the boom of his crane was over the track upon which the train was traveling and the train was 250 feet away. This estimate is contradicted by the engineer and the fireman, who estimated the distance as much shorter, and appears to be in conflict with the pertinent part of the testimony given by the truck driver who was plaintiff's witness. But even accepting plaintiff's 250 foot estimate as correct, the train's fireman could have determined that the mobile crane was not going to stop for the crossing and could have conveyed that information to the engineer only at a time when the train was much less than 500 feet from the crossing. And, as we have pointed out, the record establishes that this train could not be brought to an emergency stop in less than 500 feet.
The fireman had the right to assume that the mobile crane would stop before its boom reached the track upon which the train was traveling, and the train was not required to make an emergency stop, until it was apparent to the fireman that the crane was not going to stop. Parks v. *285 Texas Pacific-Missouri Pacific Terminal R., La.App., 152 So.2d 845; Hymel v. Texas & New Orleans Railroad Company, La. App., 145 So.2d 138; South Texas Lloyds v. City of New Orleans, La.App., 142 So. 2d 47; Bordenave v. Texas & New Orleans R. Co., La.App., 46 So.2d 525.
For the reasons assigned, the judgment appealed from is annulled and reversed and it is now ordered that there be judgment in favor of the defendant, Missouri Pacific Railroad Co., and against the plaintiff, John Sule, and the intervenor, Transportation Insurance Company, rejecting the demands of said plaintiff and intervenor; all costs to be paid by said plaintiff and intervenor.
Reversed and rendered.