CHASEZ, Judge.
This litigation arises out of an accident at a railroad crossing in Metairie, Louisiana on April 27, 1967. The plaintiff, Henry H. Gibson, Jr., was driving the car which was owned by his father, Henry H. Gibson, Sr., also plaintiff herein. Gibson, Sr. is suing for property damages to his car. Gibson, Jr. is a minor, but is emancipated and is suing for his personal injuries sustained as a result of the accident.
In a supplemental and amending petition, plaintiffs corrected the name of defendant to read Louisiana & Arkansas Railway Company. From a judgment in favor of both plaintiffs, the Louisiana & Arkansas Railway Company perfected this suspensive appeal.
The accident occurred at about 10:00 A.M. on a clear day at the intersection of Highland Avenue (Drive) which runs generally north and south and the Louisiana & Arkansas Railway Company’s (Railroad) main line tracks, which run generally east and west and at this point are located approximately 75 feet south of and parallel to the Airline Highway. The intersection of Airline Highway and Highland Avenue is controlled by a traffic signal.
As Henry H. Gibson, Jr. approached the intersection from the south the traffic light at Airline Highway and Highland Drive (Avenue) was red. Two cars ahead of Gibson had stopped for the light and when he pulled up behind the second car and stopped, the rear end of his car extended over the railroad track. As he was stopped in this position, his car was struck in the right rear by the defendant railroad’s train which was traveling west or out-bound from New Orleans.
The intersection is in a residential area and the track is straight and unobstructed in both directions from the intersection.
The plaintiffs allege that the defendant was negligent in traveling at an excessive rate of speed and, alternatively, if the court found plaintiffs to be negligent, then they specially pleaded that the railroad had the last clear chance to avoid the accident. The trial court found the . cause of the accident to be “a combination of the train’s excessive speed, under the circumstances, and the engineer’s failure to utilize a last clear chance.” Young Gibson’s negligence cannot seriously be denied. He testified that as he approached the track at a very low rate of speed he glanced in both directions and neither saw nor heard the train; that he sat on the track for about 30 to 60 seconds without ever seeing or hearing the train until he was hit. However, one witness, Ernest Me Spadden, who was the driver of the car which immediately preceded Gibson’s car over the track, testified that he heard the train’s whistle and, looking towards New Orleans to his right, he saw the train. Mr. Cartwright, a witness in a car immediately *28 behind Gibson testified that he heard the train whistle and when his car came within about 50 feet of the crossing he saw the train. He testified that he could see cars beyond or in front of Gibson’s also stopped for the red light and, thinking that Gibson would not have room to clear the track on the far side and might wish to back off the track, he backed his own car further away from the track in order to give Gibson room to back off the track if he so elected. The gist of the testimony is that two witnesses, one in front of and one behind Gibson, both heard and saw the train while Gibson, located between them, neither saw nor heard the train. There was no evidence that Gibson has impaired hearing or vision. He either saw and heard the train and still placed himself on the track, or he did not see and hear what he obviously should have seen and heard; this of course constituted gross negligence on his part. See Sule v. Missouri Pacific Railroad Company, La.App., 181 So.2d 280 (4th Cir. 1966) where the court said at page 283:
“Our settled jurisprudence is that, in negotiating a railroad crossing, the driver of a motor vehicle must use his senses of sight and hearing for possible oncoming trains; he is burdened with the responsibility of seeing and hearing that which' he might and could have seen and heard; he is required to use such care as is commensurate with the existing danger; and, if his view of the right-of-way is obstructed, he must use a higher degree of caution. Jackson v. Cook, 189 La. 860, 181 So. 195; Tucker v. Illinois Cent. R. Co., 141 La. 1096, 76 So. 212; Bertrand v. Missouri Pacific Railroad Company, La.App., 160 So.2d 19; Glisson v. Missouri Pacific Railroad Company, La.App., 158 So.2d 875; Hanks v. Arkansas & Louisiana, Missouri Ry. Co., La.App., 62 So.2d 139; Rachal v. Texas & P. Ry. Co., La.App., 61 So.2d 525.”
This being the case his only possible chance of recovery is if the train had the last clear chance to avoid the accident and failed to take advantage of it.
In order to recover under the last clear chance doctrine the plaintiff bears the burden of proving: (1) that plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself; (2) that the defendant actually discovered, or was in a position where he should have discovered plaintiff’s peril; and (3) that at the time defendant could have, through the exercise of reasonable care; avoided the accident. Faulkner v. Malloy, La.App., 203 So.2d 100 (2nd Cir. 1967); Ballard v. Piehler, La.App., 98 So. 2d 273 (1st Cir. 1957).
The plaintiff by his own testimony may have been unaware of his perilous position; if so could the defendant have avoided the accident? At the instant the emergency brakes were applied the train was traveling at a speed of 52 miles per hour. This fact was established by a speed tape mechanism of the train which graphically records speed and points at which the brakes of the train are applied. Mr. Thomas Martin testified as an expert for the Railroad and interpreted the speed tape. He related that the train involved herein, traveling at a rate of 52 m. p. h., required at the most 1389.6 feet in which to stop. This distance includes 151.84 feet covered during the maximum reaction time of the engineer; 227.76 feet which represents the distance the train would travel after the brakes were applied and before they became effective, a time limit of about 3 seconds; and 1010 feet which represents the actual distance covered during effective braking. These figures are not refuted or denied by plaintiff.
The record is also clear that the engine of the train stopped at a point 850 feet west of the intersection after striking Gibson’s car. This fact also stands unrefuted in the record.
By simply subtracting 850 feet from, the total stopping distance of 1390 feet, we reach the conclusion that the trainman began to react to his being stopped on the track about 540 feet before the intersec *29 tion, and the brakes were applied at about 388 feet before reaching the intersection. This is not denied. What is denied and is the basic dispute in this case is why the brakes were applied at this particular point.
Plaintiff contends he was at rest on the tracks for between 30 and 60 seconds. Assuming he was on the track for 30 seconds, the trainmen should have seen him at a distance of nearly 2277.60 feet because, at 52 m. p. h., the train would travel at the rate of 75.9 feet in one second and this figure is multiplied by 30 seconds to reach the figure of 2277.6 feet. We say nearly that distance because the speed decreased slightly as soon as the brakes became effective. If Gibson was stopped for longer than 30 seconds the train would naturally have been even further away. Gibson argues that the trainmen should have seen him on the tracks at 2277.6 feet and since the train required 1390 feet in which to stop, this left about 887 feet or between 10 and 15 seconds for the trainmen to react and still avoid the accident. Instead he argues, they waited until they were only 540 feet from his car before deciding that Gibson was not moving and at that point it was too late to stop.
The railroad denies this of course, and argues that Gibson was on the track for a period of only 5 to 10 seconds and that the trainmen applied the brakes as soon as they saw Gibson on the track and had no chance to avoid the accident and thus the last clear chance doctrine is inapplicable and recovery by plaintiff herein should be barred because of his own negligence.
In the final analysis the issue becomes one of fact — whether Gibson was stationary on the tracks for 30 to 60 seconds as he contends, or 5 to 10 seconds as the railroad contends.
Mr. Me Spadden, the witness who preceded Gibson over the tracks testified that Gibson’s car was a couple of car lengths behind his. He related too that it seemed to him that he was stopped for quite a while prior to the collision but could not indicate how many seconds elapsed from the time he stopped until the impact occurred.
It must be remembered, however, that even if Mr. Me Spadden was stopped for quite a while it does not necessarily follow that Gibson was stopped for quite a while. Me Spadden testified that Gibson’s vehicle was a couple of car lengths behind him which would be a distance of approximately 40-45 feet. Gibson testified that he was approaching the track at a speed of about two miles per hour (approximately 3 feet per second). Therefore it would have taken Gibson about 15 seconds to come to rest behind Me Spadden’s automobile after Me Spadden had stopped.
Mr. Me Spadden also related that as he approached the track and heard the whistle he looked to his right, in the direction of New Orleans, and saw the train near Central Avenue. According to the survey plat introduced into evidence, Central Avenue is approximately 1725 feet from Highland Avenue where the accident occurred. If Mr. Me Spadden saw the train at a distance of 1725 feet, then 15 seconds later when Gibson came onto the tracks the train would have been approximately 1275 feet closer (traveling at 52 miles per hour) or about 450-500 feet from Gibson’s car. This distance is corroborated by the testimony of Mr. Cartwright whose car was following Gibson’s.
In a tape recorded interview with plaintiffs’ counsel within a month of the accident, Mr. Cartwright related that he “would guess” that Gibson was stopped on the tracks for “approximately 30 seconds or ^4 of a minute, 45 seconds or so” before Gibson’s car was struck.
At the trial, however, he stated that Gibson’s car could have been on the track for only 5 to 10 seconds. He based this on the fact that as he approached the track he saw the train some ¿4 or )4 of a block away at which time Gibson’s car was “just settling down to a stop.” According to the *30 plat previously mentioned, the closest street to Highland was Newman Street, a distance of about 630 feet. Two thirds or three fourths of this distance would be 425 to 475 feet away.
Mr. Cartwright testified that the reason he changed his testimony was that after being subpoenaed to appear as a witness he returned to the scene of the accident and re-enacted the accident. In response to a question by plaintiffs’ counsel, he stated:
“I do know you questioned me concerning the accident but since then, since I have received the subpoena I have gone back to the accident in an automobile and rechecked, tried to ascertain more specifically distance, time, and that is where I must be different from the first questioning.”
In response to a question from the bench:
THE COURT:
“The question was how long was the taxicab (Gibson’s car) on the railroad tracks stopped before the train hit it?”
THE WITNESS:
“Since I have gone up and watched the train pass from the same direction at the same time, I have ascertained that it was from only five to ten seconds instead of this thirty to forty-five seconds I believe on the tape. At the time it was only a guess. I got in this automobile, I’m more certain that it is between five and ten seconds.”
We also note that in the tape recorded interview, Cartwright indicated he had seen the train less than a block away when plaintiffs’ car stopped. This circumstance is consistent with his later estimate of time, and irreconcilable with his earlier estimate.
Neither the train engineer nor the fireman could say exactly where the train was when the brakes were applied. However the fireman, Robert Anderson, testified that the train had already crossed Newman Street (630 feet away) when he saw Gibson, from his side of the cab, (the left side) moving slowly onto the track. He stated:
“and I told my engineer that one was coming up to the railroad and I says then that he’s easing, coming on the railroad. About that time he stopped on the track and as I hollered that he done stopped, the engineer drowned my voice out practically with the bursting of the air.” (Emergency application of. brakes).
In other words, according to the fireman’s testimony, the train was less than a block away when Gibson settled onto the tracks. Thus Gibson’s testimony that he was stopped for between 30 and 60 seconds stands alone.
We find that the evidence preponderates in favor of defendant and must conclude that the court a quo was in error in finding Gibson to be on the track for at least 30 seconds. We hold as a matter of fact that Gibson was on the track for only 5 to 10 seconds before his car was struck by the train.
As was previously stated, in order for a plaintiff to recover under the doctrine of last clear chance he must prove that the defendant actually discovered or should have discovered plaintiff’s peril and that the defendant could have, through the exercise of reasonable care, avoided the accident. Faulkner v. Malloy, supra; Ballard v. Piehler, supra.
Could the railroad reasonably have avoided the accident? Gibson, himself, as well as the fireman testified that he approached the tracks very slowly. The trainmen may presume that the motorist will stop before going onto the tracks. In the case of Hymel v. Texas & New Orleans Railroad Company, La.App., 145 So.2d *31 138 (4th Cir. 1962), and cases cited therein, this court held:
“The jurisprudence is uniform that those in charge of railroad trains may presume that an individual or vehicle approaching a crossing will stop in time to avoid an accident; and the crew is not required even to attempt to stop unless there is reason to believe the approaching motorist is unaware of the oncoming train or does not intend to stop; and a motorist must exercise every sense to ascertain if it is safe to cross.”
In this case the engineer made an emergency application of the brakes as soon as he knew Gibson was on the tracks. There was no negligence on the part of the trainmen.
According to the record it took the train a distance of 1389 feet to stop. When Gibson pulled onto the tracks the train was approximately 500 feet away. There was no possible chance for the train to stop before striking Gibson’s car. We are constrained to hold therefore that the doctrine of last clear chance has no applicability in this case. Parks v. Texas Pacific-Missouri Pacific Terminal R., La.App., 152 So.2d 845 (4th Cir. 1963). There can be no recovery against defendant if it used due care in discovering the peril and after discovering it could not avoid the accident, as in such case there would be no negligence at all on the part of defendant. Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935).
The court a quo found the excessive speed of the train to be one of the causes of the collision. We find there was no excessive speed. The record does not disclose any law or ordinance regulating the speed of trains in the area involved (which formed no part of a municipality), nor does it disclose that the railroad had adopted regulations to limit the speed of its trains in the area. Absent any speed regulations and outside city limits, a train may be operated at any speed consistent with the safety of the train and passengers.
“In the absence of legislation, no rate of speed of a railroad train approaching a crossing is, of itself, negligent. The very purpose of locomotion by railways is the accomplishment of a high rate of speed in the movement of passengers and freight, and this the law authorizes. To require railroads generally so to reduce their speed at all grade crossings as to avoid collisions with persons who may, carelessly or accidentally, be upon the crossing when a train is approaching would defeat, to a great extent, the purpose of the existence of railroads. Outside of city limits, any speed is legitimate for a railroad train which is consistent with the safety of the train and passengers, and under ordinary circumstances the running of a train at a high rate of speed over a grade crossing in the country is not deemed negligence. Even high speed over a city crossing is not always negligence, as where it appears that such crossing is not frequently used, or that the train passed at an early hour when few people might be expected to be about. Nor is the fact that a particular highway is constantly traveled by a great number of persons sufficient to render the question of negligence in running a train over it at high speed one for the jury, where the statutory signals were given upon approaching it, and there is nothing to show that the number of travelers was sufficient to impede progress, or otherwise make the crossing difficult and dangerous. Consequently, when a railroad takes all necessary precautions, and gives proper warnings to prevent strangers from being injured at crossings, it seems that a recovery cannot be based on the speed of the train.” 44 Am.Jur. verbo Railroads, p. 751.
Assuming arguendo, however, that the train was traveling at excessive speed, there is no causal relationship shown between the speed of the train and the occurrence of the accident. The train was less than 600 feet away when Gibson pulled onto the track. There is no evidentiary *32 basis on which to conclude that the accident would have been avoided had the train been moving slower. Therefore, the negligence of the train, if traveling too fast, would not be the proximate cause of the accident. Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646 (1962).
We, therefore, find that the trial court was in error in finding that the “excessive” speed of the train was a cause of the accident.
As was stated supra, the railroad is innocent of any negligence whatever. Thus it is manifestly clear that not only is Henry H. Gibson, Jr. barred from recovery on a negligence theory, or under the doctrine of last clear chance, but Henry H. Gibson, Sr. is likewise unable to recover against the railroad for damages to his car.
For the foregoing reasons the judgment rendered by the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, on the 21st day of March, 1969 in favor of Henry H. Gibson, Sr. and against Louisiana and Arkansas Railway Company for the sum of $400.00, with legal interest from judicial demand until paid and all costs, and in favor of Henry H. Gibson, Jr. against Louisiana and Arkansas Railway Company for the sum of $10,930.00, with legal interest from date of judicial demand until paid is reversed; and judgment is rendered herein in favor of the defendant, Louisiana and Arkansas Railway Company and against the plaintiffs, Henry H. Gibson, Sr. and Henry H. Gibson, Jr., dismissing the suits of said plaintiffs at their costs.
The judgment is affirmed so far as it sets the fees of the two medical experts at the sum of $100.00 each, and taxed as costs; and all costs of this appeal are assessed to appellees.
Affirmed in part, reversed in part and rendered.