SAMUEL, Judge.
This tort action was brought by a patron of a roller skating rink against the owner and his liability insurer for injuries sustained as a result of a fall. At the request of plaintiff the case was tried before a jury and he has appealed ■ from a verdict and judgment in favor of the defendants, dismissing his suit.
Plaintiff’s case is predicated upon the alleged negligence of the rink owner in the construction, use and maintenance of an entrance.-exit to and from the skating floor too narrow to serve its function, in permitting the rental of skates to patrons and the removal of outer wear and shoes by skaters, together with other activities, in the same area as that serviced by the particular entrance-exit, and by making demands over a public address system to clear the skating rink floor for an immediate contest, thus inducing the gathering of large crowds and resulting in rendering the entrance-exit inadequate, unsafe and dangerous. Plaintiff complains that this negligence caused him to be in a crowd where he was bumped and fell, sustaining a fractured elbow.
During the trial the testimony of seven witnesses was taken and the report of an eighth was received in evidence. Two of the witnesses and the author of the report were physicians, concerned only with the medical nature and extent of the injury. One witness was an architect whose testimony was concerned only with construction in connection with use of the premises as a skating rink. The remaining four witnesses, the only ones who testified regarding the occurrence of the accident, were the plaintiff and his son, and the defendant-owner, Durr, and his wife. The record reveals the following:
The building had been converted for use as a skating rink by Mr. Durr, who was a carpenter. The entrance-exit of which plaintiff complains, one of four in use at the time, was 1 foot inches in width, partially as a result of the presence of a bench near the opening. The rental of skates to patrons and the removal of outer wear and shoes by skaters were permitted in the vicinity of the opening.
Mr. Katz, who was SO years of age, had visited the rink on one prior occasion and, as stated by him in argument before this court, previously had been on skates only on that one other occasion. He arrived during the afternoon and skated with his wife and children for approximately two hours. He fell while on skates in the vicinity of the entrance-exit of which he complains.
*881 The testimony of Mr. Katz is that he was attempting to leave the skating floor through the exit while an announcement was being made over the public address system to clear the area for a contest, a customary proceeding at the rink. When he was two or three feet from the exit and in a crowd of possibly ten or twelve people, some of whom were trying to get off the floor and some of whom were trying to get on, he was bumped or touched from the back and fell.
The testimony of Mr. and Mrs. Durr contradicts that of Mr. Katz in two pertinent instances. They did not see him fall but did see him immediately thereafter while he was lying on the floor. At that time, according to them, he was on the skating floor itself, some distance away from the exit in question. They also testified that the accident did not occur while a contest was being announced; it took place after the conclusion of a contest.
The only other witness who gave testimony concerning the occurrence was plaintiff’s son, Myron, 14 years of age at the time of the trial, who said he was standing about 2 feet behind his father when the latter fell, that people were to the right and to the left (he did not say there was anyone between himself and the plaintiff), and that he was facing in the same direction as his father but could not say what had actually caused the fall. The most pertinent part of his testimony is as follows:
“Q What happened then, Myron, from then on ?
“A Then I saw my father standing in front of me and I saw he was losing his balance and so I came to try to help him and he had lost it by the time I reached him.”
Plaintiff specifies as error the refusal of the trial judge to give to the jury certain charges which he says were requested by him. Some of these charges are concerned with defects in the construction and use of business premises and their effect on the duty owed by an owner or operator of a business to an invitee or patron. Others are concerned with questions involving proximate causation and burden of proof. Plaintiff also assigns as error the sustaining of objections by the trial judge to some of the testimony sought to be elicited from the architect who testified on behalf of plaintiff. That testimony was also concerned with construction and design of the building, such as the correct method of architectural design, minimum standards, the architect’s opinion as to how the building should have been designed, etc.
A careful reading of the entire record convinces us, and we find as a fact, that Mr. Katz simply lost his balance and fell while on roller skates. Whether the fall resulted from being bumped or touched from the back, or from the fact that he was an inexperienced skater, or from a combination of both, is immaterial. If the bumping or touching actually occurred, the same must have been slight, even to the point of being inconsequential to a more experienced skater, and some jostling on a skating rink floor is an ordinary risk of participation in the sport. It is clear that neither the construction or design of the premises nor the operation of the rink, which constitute the only alleged negligence on the part of the defendant-owner, caused or contributed to Mr. Katz’s fall.
Under these circumstances the fact that the trial court maintained objections to testimony by the architect concerning faulty construction is immaterial.
In connection with the charges allegedly requested by plaintiff and which the trial court refused to give, the record does not reveal that plaintiff complied with Article 1793 of the Code of Civil Procedure (LSA-C.C.P. Art. 1793). Under the provisions of that article a party may file written requests that the court instruct the jury on the law; but a party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, *882 stating specifically the matter to which he objects and the grounds of his objection. The record in the instant case does not contain any written requests filed by the plaintiff. And plaintiff has not pointed to, nor have we been able to find in the record, any objection made by him to any refusal or failure to give a requested instruction. As provided by the article, in the absence of a proper objection he cannot assign as error the failure to give a requested instruction.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.