291 So.2d 797 (1974)
Eva Mae TROXLAIR, for herself and for and on behalf of her minor son, Harry A. Troxlair, Jr., et al.
v.
ILLINOIS CENTRAL RAILROAD COMPANY.
No. 5616.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
Rehearing Denied April 9, 1974.
Writ Refused May 31, 1974.
*799 Joseph Accardo, Jr., Chaisson & Accardo, for Eva Mae Troxlair, and others, plaintiffs-appellants.
H. Martin Hunley, Jr., Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, for Ill. Central Railroad Co., defendant-appellee.
Before GULOTTA and BOUTALL, JJ., and WICKER, J. Pro Tem.
BOUTALL, Judge.
The surviving spouse and children of a motorist brought this suit for damages for his wrongful death as a result of his automobile being struck by a railroad train at a crossing near Frenier, St. John the Baptist Parish. Jury trial was had and the jury returned a verdict finding the defendant railroad guilty of negligence and the decedent guilty of contributory negligence. The resulting judgment dismissed plaintiffs' suit and plaintiffs have taken this appeal. We affirm.
The appellants have assigned two errors and these are the only issues before us:
1. The jury erred in finding Harry Troxlair contributorily negligent.
2. The court erred in failing to adequately instruct the jury on the law of "dangerous trap", "last clear chance" and "proximate cause".
The appellee argues to us that we should consider there was error in the jury verdict finding defendant guilty of negligence, but in view of our holding, we find it unnecessary to do so.

ISSUE OF CONTRIBUTORY NEGLIGENCE
The facts are as follows. On the morning of August 1, 1969, Harry Troxlair, a deputy sheriff of St. John the Baptist Parish, drove his sheriff's car to an area called Frenier, on Lake Pontchartrain, a short distance from La Place, Louisiana. In doing so, he crossed the Illinois Central Railroad main line track and one siding immediately adjacent to each other. While near the lake he stopped and talked with an acquaintance, Frank W. Beadle, who was crabbing in the area. In the interim a freight train heading north began passing the crossing and stopped on the siding blocking the Frenier road. The road is a narrow, gravelled road leading off the main highway through the swamp to the lakeshore at Frenier and carries little traffic. Troxlair decided to leave the area, drover to the crossing and found that the freight train had the crossing blocked. He attempted to search the area to determine if there was another way out because there was another gravel road in the vicinity which crossed the tracks, but was unable to discover another way out and returned to the Frenier crossing and parked his vehicle to await the moving of the freight train. While his police vehicle was parked across the lakeside set of tracks, which happened to be the main track, the southbound Panama Limited passenger train was operating on those main line tracks and ran into Troxlair's vehicle, killing him instantly.
Our Supreme Court in the case of Odom v. Hooper, La., 273 So.2d 510 (1973) has stated that each case presenting the issue of a train-car collision should be tried on its own facts and circumstances, and the negligence vel non of the railroad and the contributory negligence vel non of the automobile driver are matters of factual determination to be followed by the application of proper law. The arbiter of the fact of contributory negligence is the jury. Mediamolle v. Texas & New Orleans Railroad Co., 169 So.2d 235 (La.App. *800 4th Cir. 1964). Findings of fact made by the jury and the verdict of the jury should not be disturbed on appeal unless there is a showing of manifest error. 20th Century-Fox Distributing Corporation v. Lakeside Theatres Inc., 267 So.2d 225, (La.App. 4th Cir. 1972); Barrois v. Service Drayage Company, 250 So.2d 135, (La.App. 4th Cir. 1971).
The evidence presented in this case consists of 420 pages of testimony produced from a number of witnesses presented by both parties, as well as numerous photographs and exhibits. It is obvious that a very thorough and far reaching investigation into the facts and circumstances surrounding this case was made by the parties, and we are impressed by the details presented to the jury. Based upon this evidence the jury answered certain specific interrogatories as follows: "Was Harry Troxlair contributorily negligent?" Answer, "Yes." "If so, was this negligence a proximate cause of the accident?" Answer, "Yes." It is our opinion that a fair evaluation of the evidence produced supports these findings.
The testimony of Mr. Beadle, a long time acquaintance of the decedent, shows that the decedent was stopped at the railroad crossing for some time awaiting the clearing of the crossing by the stopped freight train. (The freight train was parked there from 20 to 25 minutes before the accident according to all estimates.) Beadle could see the dome of the police car up at the top of the railroad incline, although he could not tell precisely the location of the vehicle. After 10 minutes or so decedent began to blow his siren, apparently in an effort to attract attention of the train crew in order to have the crossing cleared, and since he had his airconditioner working when he talked to Beadle minutes before, it may be presumed that his windows were still shut. In any event Mr. Beadle testified that after the decedent began blowing the police siren he heard the train whistle and the other noises made by the approaching train, and then the crash occurred. The fact that the decedent was indeed parked across the main line track is shown by the testimony of both the engineer and the fireman of the Panama Limited, who testified that as the crossing came into view, a distance of approximately ¼ of a mile away, the vehicle was parked upon the track and stayed there until the collision. The evidence affords no other conclusion than the fact that the decedent pulled his police car up onto the other track in order to attract the attention of the crew of the parked freight train, and because of his attempts to draw attention to himself, the decedent did not observe the approaching train in time to remove himself from the track.
Nevertheless, appellants urge to us that the negligence of the decedent is absolved by the application of the doctrine of "last clear chance", or the doctrine of "dangerous trap". We do not believe the evidence presented in this case supports the application of either doctrine, but we will discuss each in turn.
In connection with the doctrine of last clear chance we have stated in the case of Gibson v. Kansas City Southern Railroad Company, 233 So.2d 26 (La.App. 4th Cir., 1970) the following:
"In order to recover under the last clear chance doctrine the plaintiff bears the burden of proving: (1) that plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself; (2) that the defendant actually discovered, or was in a position where he should have discovered plaintiff's peril; and (3) that at the time defendant could have, through the exercise of reasonable care; avoided the accident. Faulkner v. Malloy, La.App., 203 So.2d 100 (2nd Cir. 1967); Ballard v. Piehler, La.App., 98 So.2d 273 (1st Cir. 1957)."
The evidence shows that the railroad tracks in this area form a long, slight curve, such that the presence of an automobile *801 on the crossing becomes apparent at a distance of some 1500 feet away. This is a rural area, and the railroad tracks traverse the swamp land between Manchac and Kenner, Louisiana. The railroad has imposed a speed limit of 79 miles per hour on its trains in this vicinity, and the evidence discloses that the train was making this speed or several miles less. At the time of the accident, the area in the vicinity of the crossing was grown up with high weeds.
The evidence discloses that the train engineer did all that he could to avoid the collision. He saw the vehicle as soon as it was possible to do so. He blew his whistle numerous times, and the oscillating headlight on the front of the train was in operation. He applied the emergency brakes as soon as the danger was apparent. What he could not do was timely stop the train within the space allotted under the circumstances. At a speed of 79 miles per hour the Panama Limited as then composed would require a distance of 4074 feet to bring the train to a stop. By measurement, the distance at which the crossing could be seen was 1529 feet. The train was computed to have actually stopped within 3770 feet, indicating a speed of approximately 76 miles per hour. The physical stopping of the train, without considering reaction time, etc. within the distance of 1529 feet requires the train to be travelling at a speed of less than 50 miles per hour. Of course, the figures above are computations and subject to variation, but they do clearly demonstrate that the engineer, when he discovered, or should have discovered the decedent's peril, could not have avoided the accident by stopping in time.
Next we move to a consideration of the "dangerous trap" doctrine. We are referred to the case of Bertrand v. Missouri Pacific Railroad Company, 160 So.2d 19 (La.App. 3rd Cir. 1964) which cites with approval a summarization of the dangerous trap doctrine as stated in Glisson v. Missouri Pacific Railroad Company, 158 So.2d 875 (La.App. 3rd Cir. 1963) as follows:
"`Succinctly stated, these cases, and the authorities cited therein, hold that if a crossing is unusually dangerous because the view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has a view of the oncoming train, the railroad company will be held liable, unless it can show that it took unusual precautions, such as reducing the speed of the train, or increasing its warnings or providing signaling devices, etc. The theory of this doctrine is that the railroad may not rely upon the duty of the motorist to stop and look, if the physical circumstances are such that stopping and looking will do the motorist no good."`
We do not believe the doctrine to be pertinent here. This is not a situation in which the driver of a vehicle must place himself in a position of peril to cross the railroad tracks, because he cannot see an approaching train within sufficient time or distance that he may either stop or cross in safety. The decedent in this case could not cross the tracks under any circumstances, because the crossing was blocked by the parked freight train. He entered the tracks, not for the purpose of then and there crossing, but in order to attract the attention of the freight train crew so that the train might be moved to facilitate him. We refer again to the case of Glisson v. Kansas City Southern Railroad Company, supra, wherein we quoted language from the case of Sule v. Missouri Pacific Railroad Company, 181 So.2d 280 (La.App. 4th Cir. 1965) on page 283:
"`Our settled jurisprudence is that, in negotiating a railroad crossing, the driver of a motor vehicle must use his senses of sight and hearing for possible oncoming trains; he is burdened with the responsibility of seeing and hearing that which he might and could have seen and heard; he is required to use such care as *802 is commensurate with the existing danger; and, if his view of the right-of-way is obstructed, he must use a higher degree of caution.'" (Cited cases omitted.)
The evidence reflects that the train crew saw the decedent's vehicle at a distance of more than 1500 feet. Certainly the decedent could have likewise seen the train at that distance had he looked. See Zeringue v. Texas & Pacific Railway Co., 196 So.2d 809 (La.App. 4th Cir. 1966). We conclude that the decedent was guilty of negligence in placing his vehicle upon the main line of the railroad track in a position of peril without using proper care in watching for the approach of an oncoming train and that this negligence was the proximate cause of the collision.

FAILURE TO ADEQUATELY INSTRUCT JURY.
The other error assigned in the court's failure to adequately instruct the jury on the law relative to "dangerous trap," "proximate cause" and "last clear chance". In regard to the instructions pertaining to a "dangerous trap" appellant complains that the court altered plaintiff's special charge number (2) so that it did not properly state the law, and refused to use plaintiff's charges (4) and (10). While we perceive no error in special charge (2) as given, we note that no objection was made to the alternation of this charge, nor was any objection made to the refusal to give the other two special charges. LSA-C.C.P. Art. 1793 requires a party to make objection, stating specifically the matter to which he objects and the grounds of his objection, to jury instructions, and unless such objection is made, error cannot be assigned for our consideration. To preserve his right of appeal, the litigant adversely affected must enter such objection. Gryder v. Travelers Insurance Company, 193 So.2d 532 (La.App. 1st Cir. 1966); Katz v. Insurance Company of North America, 150 So.2d 879 (La.App. 4th Cir. 1963). We are therefore of the opinion that the appellants have waived their objection under the circumstances and cannot now be heard to complain.
Appellants further assign as error the court's instructions on proximate cause and last clear chance, which we feel we should consider together. They complain of an inadequate general charge, improper interrogatories addressed to the jury and failure to give special charges. As noted above there were no objections lodged in the trial court, and we are of the opinion that the objections now raised were similarly waived. In support of this proposition in relation to the general charge, we refer to the cases of Arnold v. United States Rubber Company, 203 So.2d 764 (La.App. 3rd Cir. 1967) and Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (La.App. 3rd Cir. 1962). Also Mulkey v. Aetna Casualty & Surety Company, 210 So.2d 897 (La.App. 1st Cir. 1968). The same rule applies to the submission of the written interrogatories to the jury. Derouen v. Hartford Accident & Indemnity Company, 215 So.2d 144 (La.App. 3rd Cir. 1968), Mulkey v. Aetna Casualty & Surety Company, supra. As to the failure to give special charges, we have discussed the same above in relation to dangerous trap.
By virtue of the authorities mentioned above, we are disposed to not discuss this question at all, except for the fact that appellants have urged to us that the combination of charges relating to proximate cause and last clear chance, when considered together with the interrogatories, created a situation wherein the jury could not properly deliver a verdict on the doctrine of last clear chance. Out of an abundance of caution we have examined the charges given by the court and the interrogatories. We note that the instructions and the interrogatories when considered together do lead to a fair consideration by the jury. As a matter of fact, the only objections raised as to unfairness were raised by the defendant, and the jury was reinstructed by the court to correct what he felt was in error. The jury requested further instructions on the question *803 of proximate cause and the judge gave lengthy and exhaustive definitions thereof. Again only objection made was that of defendant, and plaintiffs-appellants raised no objection. The appellants, after having had ample opportunity to object, were willing to permit the jury to consider the case, and it is only now after they have received an unfavorable verdict and judgment that this error is urged as a basis for reversal. We feel under the circumstances appellants have also waived these objections and cannot now be heard to complain. See Johnson v. H. W. Parson Motors, Inc., 231 So. 2d 73 (La.App. 1st Cir. 1970).
For the foregoing reasons, we conclude that appellants have been given a fair and impartial trial, and we find no error either in the actions of the trial judge, or in the findings and verdict of the jury. We therefore affirm the judgment appealed from at the cost of appellants.
Affirmed.