309 So.2d 402 (1975)
Butler WATTS, Plaintiff-Appellant,
v.
AETNA CASUALTY & SURETY COMPANY et al., Defendants-Appellants.
No. 12502.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1975.
Rehearing Denied April 1, 1975.
Writs Refused June 13, 1975.
*404 Booth, Lockard, Jack, Pleasant & LeSage, by Troy E. Bain, Shreveport, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for defendants-appellants.
Before AYRES, HALL and DENNIS, JJ.
En Banc. Rehearing Denied April 1, 1975.
DENNIS, Judge.
This tort action results from an altercation between plaintiff Butler Watts and defendant Robert B. Baker, Jr., which occurred on August 21, 1972 at Baker's place of employment, an automobile agency in Shreveport. Baker was a service advisor for the agency, and it was his job to make arrangements for automobile mechanical work between customers and the agency's repair shop. On an earlier occasion, about twelve days before the incident in question here, Watts had dealt with Baker about some work done on his car. Watts felt that he had been charged for some unnecessary work on that occasion. On August 21, 1972 Watts brought his car back to the shop because of a different mechanical problem. He again dealt with Baker, and the two immediately disagreed about the possible cause of the automobile trouble. Watts snatched a work order pad from Baker's hand and wrote some instructions of his own to the shop mechanics. Baker retrieved the tablet and scratched out Watts' notations on the work order. Heated words were spoken, but Watts left the car at the shop and departed without further incident. Later that day, after a mechanic had discovered the cause of the problem, Baker called Watts and asked him to come to the shop to verify the mechanic's determination before any repair work was begun. When Watts arrived, Baker showed him the car. In the presence of other shop employees Baker emphatically stated that he had been right and Watts had been wrong about the cause of the car trouble. Watts and Baker then engaged in a heated argument about the events which transpired on this and the previous occasion when his car had been in the shop. The dispute culminated in Baker striking Watts twice and rendering him unconscious for several minutes. Watts was taken to the hospital and received treatment and medication from physicians for a period of time.
Watts sued Baker, his employer and its insurer for damages. The principal issues litigated were: whether Watts provoked the attack; whether Baker used excessive force; and the extent of injury to Watts caused by the incident.
After a jury trial below, a verdict was rendered against Baker, his employer and its insurer in favor of Watts in the amount of $27,500. The trial judge entered a judgment in accordance with the verdict and denied motions for new trials by plaintiff and defendants. All parties appealed.
*405 In his specification of errors the plaintiff complains that the trial judge erroneously instructed the jury on self-defense, mitigation of damages, and loss of earnings; and wrongfully refused to give correct instructions on these issues which were requested by the plaintiff. Defendants charge that the jury erred in finding that Baker was the aggressor, in rendering a verdict contrary to the evidence, in failing to mitigate the damages, and in returning an excessive verdict. In their specifications, defendants also state that the trial judge erred in failing to set aside the jury verdict and in failing to grant them a new trial.
We do not find reversible merit in the contentions made, for the reasons indicated as follows:
All of plaintiff's formal specifications of error related to jury instructions. La.C.C. P. Art. 1793, in pertinent part, provides:
"* * * A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." (Emphasis added)
Our courts have consistently held that, because of this provision, in order to preserve the right to appeal from the failure to give a requested instruction or the giving of an improper instruction, a litigant adversely affected must enter his objection into the record before the jury retires to consider its verdict, and, in addition, must enter of record the specific matter which he contends is objectionable, as well as his grounds for the objection. Gryder v. Travelers Insurance Company, 193 So.2d 532 (La.App. 1st Cir. 1966); Troxlair v. Illinois Central Railroad Company, 291 So.2d 797 (La.App., 4th Cir. 1974); Mulkey v. Aetna Casualty & Surety Company, 210 So.2d 897 (La.App., 1st Cir. 1968); Katz v. Insurance Company of North American, 150 So.2d 879 (La.App., 4th Cir. 1963).
In the present case attorneys for both parties made timely objections to the trial judge's failure to give all their requested instructions, and the plaintiff's attorney objected timely to the charge that was given relating to self-defense. The record reflects that the objections were made out of the hearing of the jury. But the record also reveals that neither attorney stated specifically the matter to which he objected or the grounds for his objections.
Under the plain, clear and unambiguous provisions of the hereinabove cited statute, a litigant who fails to comply with its terms waives his right to complain of the giving of an improper instruction or the failure to render a requested special charge. Gryder v. Travelers Insurance Company, supra. The proper and efficient administration of civil jury trials demands that a trial judge be given an adequate opportunity to recognize and correct errors he may have committed in his instructions before submitting the case to the jury. Therefore, it is important that the provisions of the Code which seek to accomplish this end be enforced, and that a litigant should not be allowed to state for the first time on appeal the specific matter and grounds involved in his objection.
Although plaintiff's attorney stated at the close of the trial he had filed a memo in support of his requested instructions, it does not appear in the record. After diligent search we cannot find anywhere in the case a specific statement of the matter objected to or of the grounds of the objections by either attorney. For this reason, and because our review of the record in this case indicates that substantial justice was done in the proceedings below, we will not consider the parties' untimely specification of objectionable matter or their tardily stated grounds for objections pertaining to jury instructions.
*406 Defendants' first three specifications of error question whether the jury acted within its discretion in determining that Baker committed a battery upon Watts. The plaintiff, Watts, testified that during his argument with Baker, he did not curse or threaten Baker. The defendant, Baker, testified that Watts cursed him vilely and repeatedly during the dispute and that he struck Watts in the face twice because Watts drew back his fist as if to hit him. The other witnesses, all Baker's co-employees, generally corroborated his version of the altercation. There were significant differences in their testimony as to the exact number and wording of the epithets used by Watts. The witnesses generally agreed, however, that Watts several times referred to Baker by appellations which, if taken literally, accused him of incest and derogatorily described his maternal descent, and which were preceded by a term Baker may have considered sacrilegious. More importantly, these witnesses differed a great deal on whether Watts had drawn back his hand, whether he made a fist with the hand, or whether any motion by Watts appeared to be hostile. During the witnesses' testimony regarding this issue the attorneys asked them to demonstrate with arms and hands how Watts had moved, and the attorneys also used demonstrative movements of their own during the interrogations. Of course, none of this demonstrative evidence, which must have been very helpful to the jury, could be incorporated in the written record to which our review is limited.
The principles of law governing the trial of actions for damages for battery are well settled. Mere words, no matter how calculatedly they are used to excite or irritate, cannot justify a battery. Morneau v. American Oil Company, 272 So.2d 313 (La.S.Ct.1973); Richardson v. Zuntz, 26 La.Ann. 313 (1874). Provocation by words, however, can be considered in mitigation of damages although rejected as justification for an unlawful act. Morneau v. American Oil Company, supra. Even where there is an aggressive act, justifying a battery, the person retaliating may use only so much force as is necessary to repel the aggression, and if he goes beyond this, using force in excess of what would have been reasonably necessary, he is liable for damages for injury caused by employment of such unnecessary force. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969).
Without question Baker struck Watts twice in the face without receiving a blow himself. It is undisputed that after the second blow Watts fell to the shop floor and lost consciousness for several minutes. Beyond these facts, however, we cannot be certain what the jury found, since written interrogatories were not submitted. In our opinion the jury should have decided that Watts cursed and reviled Baker. From a reading of the record we find that a determination for either party would have been reasonable on the other crucial issues involving the altercation itself, viz., whether Watts appeared to move his hand in such a manner as to physically threaten Baker; and whether, under the circumstances, and given the age, size, and physical characteristics of the parties, Baker used more force than reasonably appeared necessary to repel the aggression. Furthermore, we are mindful of the fact that much of the evidence which would have been important to a correct determination of" these issues consisted of demeanor and demonstrative evidence which was available to the jury but not to us.
We cannot find manifest error in either one of two conclusions which the jury could have reached as a basis for its verdict. The jury reasonably could have found there was no aggressive act or appearance of a hostile movement on Watts' part justifying retaliation by Baker; or, it could have reasonably found that, although Watts provoked the attack by an antagonistic movement of his hand, Baker used excessive force under the circumstances. Therefore, we conclude, from the transcript *407 of the conflicting testimony of the witnesses, that the jury acted within its authority in finding for the plaintiff, on the issue of liability.
Although plaintiff did not object to the jury's award in his specifications of errors, he devoted a major portion of his oral and written argument to the subject. Therefore, we will consider his complaint that the award was inadequate along with the defendants' specification that the jury erred in returning an excessive verdict.
Watts was 55 years old when the injury occurred, and he had suffered from a heart condition for several years. In June, 1972 he developed a mild congestive heart failure, but his cardiologist placed him on medication which brought the condition under control by the latter part of July, 1972.
As a result of the blows Watts received on August 21, 1972 he fell to the floor striking his head on the concrete and a metal bolt. He was given emergency treatment at the Willis-Knighton Hospital by Dr. Albert Bullock, a general surgeon. The doctor said Watts complained of headaches, and was incommunicative. The patient also displayed symptoms of a cerebral concussion, contusions of the eye and scalp, and auricular fibrillation. Watts was placed in intensive care for treatment of his heart condition and for observation of signs of brain injury.
On August 25, 1972, Watts was transferred to Schumpert Hospital and placed under the care of his regular physician, Dr. Frank T. Dienst, Jr. He still suffered from headaches, fever, hematoma of the left eye, a swollen and sore jaw, and several loose and broken teeth. He had also lapsed into a mild heart failure. Dr. Dienst concluded that his heart condition had regressed as a result of the blows he had received. After a period of treatment for these injuries, Watts was discharged from the hospital on August 31, 1972. He was seen on four other occasions as an out-patient by Dr. Dienst, who found that his heart condition had improved on each visit. Dr. Dienst stated that Watts' heart condition had returned to its pre-injury status within 30 days of the battery.
Because of symptoms of depression, Dr. Dienst had Dr. James Shipp, a neurologist, conduct a neurological examination. He ran electroencephalogram tests on Watts on August 28, 1972, September 27, 1972 and May 17, 1973. Dr. Shipp testified the first test indicated the presence of brain injury or disease, the second test reflected a marked improvement, and the third test showed signs of a slight additional improvement but continued existence of an abnormal brain condition. Dr. Shipp was of the opinion that the beating had caused Watts to suffer a severe concussion or contusion of the brain from which some permanent brain damage had resulted.
Dr. Dienst also referred his patient to Dr. Heinz Faludi, a neurological surgeon, for a neurological examination, which was conducted on September 28, 1972. He testified that, from his examination, he thought Watts had suffered a cerebral concussion but had largely overcome its effects. He detected a tremor in Watts' hands, which he said could indicate neurological damage or merely anxiety and tension. He stated Watts had experienced loss of energy and weakness, probably due to anxiety or mild depression. He prescribed an antidepressant and a tonic. Dr. Faludi found no evidence of unhealed brain injury or disease but conceded the possibility of existing abnormalities that could be detected with electroencephalogram or psychological tests which he had not performed in his routine examination.
Dr. Paul Ware, a psychiatrist and neurologist, conducted a neuropsychiatry evaluation of Watts on July 3, 1973 at the request of the plaintiff's attorney. At this time plaintiff complained of headaches, loss of memory, impotence and irritability. Based on a psychological test administered by Donald Gucker, a psychologist, and his own examination, Dr. Ware arrived at an opinion that Watts had sustained a cerebral *408 contusion and a depressive neurosis as a result of the battery. Although he thought the plaintiff could improve with antidepressive medication and supportive psychiatherapy, he was of the opinion that some permanent brain damage had resulted.
Dr. W. H. Kimbell, a psychiatrist, examined plaintiff on December 13, 1973 at the request of the defendants' attorney. His diagnosis was nonpsychotic organic brain syndrome. He testified plaintiff was "mildly depressed secondary to the organic brain syndrome" he had sustained. He observed a general slowness in plaintiff's thinking and movements, but considered these normal post-concussion symptoms which would last for a few weeks or for years.
Watts testified that after he was released from the hospital he felt a general weakness, and lack of energy. He also experienced shortness of breath and dizziness for a few months. He stated that he continued to suffer from headaches and found himself grouchy and irritable much more than before the injury. He stated that he had been impotent since the injury and that because of his depression he had withdrawn almost completely from association with his former acquaintances.
Plaintiff was employed by the City of Shreveport as a sign inspector at a salary of approximately $600 per month. As a result of his injury, he was off the job one month, after which he resumed work. Watts had been in the auto sales business for many years in south Louisiana before moving to Shreveport early in 1972. After moving, he had continued to purchase cars for dealers in south Louisiana on a limited basis and from this activity had succeeded in augmenting his income on the average of about $190 per month. Since the injury plaintiff had purchased only one auto on October 31, 1972. He testified that he was afraid to purchase any more autos because of his ability to remember quoted prices and to effectively engage in negotiations had been severely impaired.
When a jury fixes an award, and that award is not disapproved by the trial judge, the action of the trial court is entitled to much respect, and should be upset only when it can be demonstrated that the jury abused its discretion. C.C. Art. 1934(3); Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La.S.Ct. 1974). One appropriate method of testing whether the jury abused its discretion is to determine whether the award of the jury can be supported by the evidence. Spillers v. Montgomery Ward & Company, Inc., supra.
The testimony of the experts corroborates the complaints and testimony of Watts. The findings are substantially consistent to the effect that as a consequence of the battery Watts received a severe concussion or contusion of the brain which resulted in permanent brain damage of an unknown extent. Watts developed a depressive neurosis because of these injuries. His condition did not prevent him from returning to his regular employment after one month, but did make it impossible for him to pursue his avocation of used car buying, an activity from which he had derived extra income and great personal satisfaction. Additionally he had been deprived of much enjoyment of life by his condition of impotency, his irritability, and his withdrawal from social contacts. The evidence was inconclusive as to how long these disabilities would endure, but a finding by the jury that they were of a permanent nature would not have been unreasonable.
We cannot say that the jury abused its discretion when it returned an award for $27,500, because from the evidence it would have been justified in compensating plaintiff for pain, suffering, permanent brain damage, permanent change of personality, permanent loss of sexual potency, temporary worsening of his heart *409 condition, loss of one month's pay, and loss of past and future earnings as a used car buyer. Much less are we prepared to find that the jury failed to exercise its discretion properly with regard to the question of litigation of damages. The Supreme Court, in Morneau v. American Oil Company, supra, merely stated that "[p]rovocation by words ... can be considered in mitigation of damages..." and held that the words used in the context of the incident involved in that case were insufficient to merit any mitigation of damages. Our search of the jurisprudence has failed to disclose a statement of a more definite standard for deciding when and how much damages should be mitigated. We are, therefore, led to the conclusion that both questions are peculiarly within the discretion of the trier of facts.
In our view, the evidence of the words used by Watts in this case was sufficient to provide a basis for mitigation. But we also conclude that a refusal by the jury to mitigate, or a refusal to mitigate more drastically, in this case would not have been an abuse of its vast discretion pertaining to this issue.
On the other hand, we are unable to find that the jury abused its discretion in assessing an inadequate amount in damages. Even without mitigation of the damages we find that the award was within the much discretion that must be left to the jury. Considering that it was permissible for the jury to mitigate the damages, it is very clear that the verdict does not represent an inadequate award.
Plaintiff points out that the Civil Code does not authorize mitigation of damages by the trier of fact because of verbal provocation. He cogently argues that the concept is a jurisprudential importation from the common law and that the weight of authority there allows mitigation of punitive damages only. Since Louisiana law does not provide for the assessment of punitive damages, he logically asserts, we should reject the notion entirely. However, the rule that provocation by words can be considered in mitigation of damages, although rejected as justification for an unlawful act, long has been established and lately was reaffirmed after an exhaustive review of prior cases in Morneau v. American Oil Company, 272 So.2d 313 (La.S.Ct.1973) (citing authorities). In view of the thorough reconsideration and recent approval of the rule by our Supreme Court we must decline plaintiff's entreaty to abolish the practice of considering provocation by words in mitigation of damages.
For the reasons assigned, the judgment rendered in accordance with the jury verdict is affirmed, at the cost of the defendants-appellants.
Affirmed.