BEER, Judge.
Though a number of issues are fairly stated and vigorously argued by able counsel for appellant, such contentions may be essentially mooted and, for all practical purposes, obviated by a finding on our part that the quantum awarded by the jury (and sustained by the trial judge’s refusal to grant an additur) does not constitute an abuse of the trial court’s discretion.
Accordingly, we turn first to that consideration.
Mr. Suhor experienced a back injury in a typical rear-end automobile collision, and appellee’s legal responsibility for the damages incurred is not at issue here.
The accident happened on November 3, 1975, and resulted in Suhor’s conservative, though fairly intensive, treatment by Dr. Kenneth Adatto until February, 1976— about three months post accident — when, with his condition showing no improvement, a myelogram, indicating objective findings, was performed.
As a result, Suhor underwent a laminec-tomy on March 31, resulting in his hospitalization until April 15.
The record, and particularly the testimony of Dr. Adatto, indicates that the fusion sought in the operative procedures was “not solid,” but there is a difference in professional opinion between the medical experts who testified in this case regarding the implications of this result.
Likewise, the record reveals other differences of expert opinion concerning the overall effect of the injury and subsequent operative procedures described above. Dr. Richard W. Levy was of the view that Suhor’s post operative recovery had been quite satisfactory, that his comprehensive examination demonstrated no neurological abnormalities and that Suhor was fully capable of returning to generally unrestricted gainful employment. Suhor, himself, supported to some extent by the testimony of Dr. Marvin Miller, a psychiatrist, and by Ms. Susan Smith, an occupational therapist and vocational, evaluator, contended that his employment options had been markedly limited by his injury, that such limitation *MCCCXL had caused mental problems which, in turn, had exacerbated the situation, and that his spotty work record since the accident and resulting surgery indicated an essentially static situation which would, most likely, confront him for the balance of his work life expectancy.
Plaintiff also relied upon the testimony of Dr. Melville Wolf son, an expert in computation of wage loss and present value analysis, to support his wage loss claim.
Thus, the jury had before it a clear issue of credibility with respect to the severity and the long term implications of Suhor’s injury and resulting disability. The record leaves no doubt about the fact that Suhor had been injured; that surgery had been necessary as a result of the injury; and that some recompense is obviously due.
If, however, the jury made a factual determination that Suhor’s situation was essentially as described by Dr. Levy — and confirmed to some extent by Dr. Adatto— the proper quantum range for such recompense would be quite a bit lower than if the jury determined that Suhor’s injury had resulted in the permanent type situation described by Suhor himself and supported in various ways by the testimony of the psychiatrist, Dr. Miller, Ms. Smith and Dr. Wolfson, the economics expert. Specifically, the jury was confronted by the necessity to make certain clearly defined credibility determinations, including, inter alia, the extent of Mr. Suhor’s permanent disability and the effect thereof upon his continued gainful employment.
Our examination of the record with respect this critical issue convinces us that there was reasonable support for the jury’s apparent conclusion that Suhor, though clearly required to undergo considerable discomfort, hospitalization, operative procedures, and a period of recuperation was, nevertheless, able to get back to work and into the mainstream of life in all important respects and within a reasonable time frame.
Just as true is the observation that the record also reasonably supports a much more drastic and far longer termed conclusion with respect to disability. It’s a question of which version the jury chose to accept.
Guided by the Supreme Court’s mandate, we direct our consideration to this narrowed premise:
Granting the jury their broad powers in the determinative process of fact finding, and recognizing the support provided by the record as noted previously, we ask ourselves if the award of $25,000 was so low as to constitute a breach of discretion and, thereby, require us to substitute our judgment for theirs. We think not. The award is low — even applying the rules noted above. But it is not so low as to require our intervention — particularly in light of those restraints which we are bound to follow. See: Anderson v. Welding Testing Laboratory, 304 So.2d 351 (La.1974), and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
For a reviewing court’s consideration, we turn to able counsel’s other contentions, which are as follows:
The trial court erred in permitting the defendants to introduce evidence as of their inability to pay or respond in judgment.
In the event the “ability to pay” doctrine may be properly considered in determining the amount of damages to be awarded, then the trial court erred in refusing to allow plaintiff to introduce into evidence insurance policy limits to rebut defendant’s defense of inability to pay. The trial court erred in charging the jury that the ability or inability of defendants to pay or respond in judgment, over and above insurance policy limits, may be properly considered in determining the amount of damages, when the jury was not informed of said insurance policy limits.
*MCCCXLI Our views concerning both the constitutionality and general acceptability of the “inability to pay” rule were discussed in detail in Davis v. Moore, 353 So.2d 740 (La.App. 4th Cir. 1977), writs refused, February, 1978. It serves no useful purpose to reiterate.
Granting the premise that defendant’s ability to pay is a proper jury consideration, appellant, nevertheless, contends that monetary limits of the various applicable policies are also relevant to the issue and should have been available for the jury’s consideration. Appellee argues that failure to actually seek introduction of this evidence waived the issue on appeal. Alternatively, if the issue is preserved, appellees contend that the policy limit is analogous to evidence of wealth or affluence and, hence, an improper consideration under the ability to pay doctrine.
In Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868 (La.App. 1st Cir. 1975), writ den. 323 So.2d 478 (La.1975), the Supreme Court noted its disapproval of a trial court decision not to disclose the amount of insurance coverage to the jury, and took issue with the appellate court’s reasoning that such evidence violated the established rule against admission of evidence of the defendant’s affluence or wealth. Thereafter, in Domingue v. Continental Insurance Company, 348 So.2d 209 (La.App. 3rd Cir. 1977), our brothers in the Third Circuit held that it was not reversible error to allow the jury to see the insurance policy including the dollar amount limits.
Here, however, able counsel for Suhor attempted to present such evidence indirectly — by various objections during the course of the trial. Actual evidence of policy limits was neither directly introduced nor directly proffered at the trial, and such tactical considerations as may have precipitated the non-introduction and non-proffer leave us little range within which we can act. This is not a case where the trial judge sustained an objection to the admis-sability and/or relevancy of the evidence and, thereby, excluded it. The record is void of any clear cut, affirmative offer to introduce (or, failing that, to proffer) the policy limits, although we take note of counsel’s objections to the introduction of “ability to pay” testimony without the ability to introduce the policy limit evidence. So, it is apparent that counsel for Suhor labored under the assumption that he was prevented from introducing the policy limit evidence.
Finally, appellant contends that the jury charge with regard to consideration of defendant’s ability to pay over and above insurance coverage, without specifying the policy limits, was prejudicial and erroneous. However, appellee, State Farm, argues that appellant’s objection to the jury charge was not sufficiently specific and, thus, precluded by La.C.C.P. art. 1793.
Plaintiff’s able counsel did not request a jury charge on the issue of insurance coverage but during the charge conference, he apparently requested that the various pertinent policies be submitted to the jury.
When the jury retired to deliberate, plaintiff’s counsel made an objection to the jury charge dealing with ability or inability of Donald Bellow and Darlene Bellow Gusse to pay but was not specific within the unequivocal terms of La.C.C.P. art. 1793, which requires counsel to state “. specifically the matter to which he objects and the grounds of his objection.” Watts v. Aetna Casualty & Surety Company, 309 So.2d 402 (La.App. 2nd Cir. 1975), writ den. 313 So.2d 601 (La.1975); Katz v. Insurance Company of North America, 150 So.2d 879 (La.App. 4th Cir. 1963), writ ref., 244 La. 476, 152 So.2d 565 (1963).
Although the foregoing observations form the basis for our view that error, if any there was, forms no proper basis for reversal or remand, certain trial tactics provoke comment:
The evidentiary presentation of Bellow’s alleged inability to pay appears to have been orchestrated by the insurer whose coverage would only come into effect if the amount of the jury verdict exceeded the primary coverage on the negligently operated automobile. Since we conclude that neither the jury nor the trial judge, in his denial of the motion for additur, has breached their much discretion in assessing damages, we feel constrained from con *MCCCXLII sidering the effects of such manipulation. Even so, it was a less than savory procedure and, in our view, abused the spirit and the intent of La.C.C. art. 1934.
One way to have obviated this questionable tactic was for the trial court to have carefully followed the Ashley rule, supra.
Thus, we conclude that the better practice would have been for the trial court to have instructed the jury regarding the provisions of La.C.C. art. 1934, and to have also pointed out to them that such considerations played a part in their quantum deliberations only if the verdict exceeded the combined total of the applicable insurance policy limits of $350,000.00. Stated another way, we believe that the introduction of evidence relative to the insured defendant’s inability to pay forms a proper basis for the full disclosure of policy limits. Otherwise, the evidence adduced in support of the Article 1934 thesis is little more than a sham.
For the reasons discussed in the first portion of this opinion, the judgment is, with some reluctance, affirmed.

AFFIRMED.

GULOTTA, J., dissents.