STOKER, Judge.
This is an appeal by plaintiffs, Donald and Tammy Johnson, from a judgment holding the defendants, Union Pacific Railroad Company, Darrell W. Thomas, and David A. Nelson, not hable for personal injuries sustained by Donald Johnson when the eighteen wheeler track he was driving was struck by a Union Pacific train. At the time of the accident, Thomas was the tram’s engineer and Nelson was the train’s brakeman. At trial, Nelson was voluntarily dismissed by plaintiffs as a party-defendant. An intervention was filed by Johnson’s employer, Fielder Tracking, Inc., and its worker’s compensation insurer, Louisiana Safety Association Self Insurer’s Fund, seeking reimbursement of benefits paid. Fielder Trucking, Inc. also filed a separate suit against Union Pacific for damages to its truck. The suits were consolidated for trial. However, the Johnsons’ suit is the only one before us on appeal.
After a trial on the merits, the jury held in favor of the defendants, finding no negligence on the part of Darrell W. Thomas or *63 Missouri Pacific Railroad (d/b/a Union Pacific Railroad) and that there was no visual obstruction at the crossing which created an unreasonably dangerous condition and which was a cause of the accident.[1] Plaintiffs and Fielder Trucking, Inc. appeal this judgment. We affirm.
FACTS
On November 8, 1989, between 1:00 and 2:00 p.m., Donald Johnson was driving his eighteen wheeler truck north on Hwy. 165 in Kinder, Louisiana. Johnson approached a railroad crossing travelling between ten and fifteen miles per hour. An old depot building, owned by Union Pacific, was located twenty-one to twenty-two feet from the railroad track and twenty-four feet from Hwy. 165, in the southeast comer of the intersection. As Johnson drew closer to the tracks, a train entered the crossing travelling west at eighteen to twenty m.p.h. Johnson braked the eighteen wheeler and skidded about nineteen feet. The eighteen wheeler was struck by the train in the cab section and it jackknifed. The train was thrown into emergency at about the time of impact, which stopped it as quickly as possible. Johnson jumped from the eighteen wheeler’s cab around the time of impact and was able to walk away from the accident.
OPINION
The issues presented for our consideration are whether Union Pacific Railroad is liable to the plaintiffs for the injuries sustained by Donald Johnson in the accident, under either negligence or strict liability, and, if so, the percentage of fault which should be allocated to each party and the amount of damages to which Donald and Tammy are entitled. Specifically, the appellants contend that Union Pacific should be held liable because the train was allegedly speeding, the train crew allegedly failed to blow the train’s whistle before reaching the intersection, an old depot building owned by Union Pacific obstructed the driver’s view of the tracks, and the automatic signal lights at the crossing were malfunctioning. We affirm.
EXCESSIVE SPEED
Plaintiffs alleged at trial that Union Pacific is liable for its train crew’s negligence in operating the train at an excessive speed. Plaintiffs admit in brief that there is no evidence to support their theory that the train was speeding and we find none. Therefore, this assignment is meritless.
FAILURE TO BLOW WHISTLE
Plaintiffs next allege the trial judge erred in failing to find that the defendants were negligent for failing to blow the train’s whistle. The law requires the whistle to be sounded for three hundred yards prior to reaching a crossing. LSA-R.S. 32:168. The jury found no negligence on the part of the defendants, thus implicitly finding the train whistle was properly sounded.
In this case, only Donald Johnson testified that the train failed to sound its whistle prior to reaching the crossing. All of the other numerous witnesses in this case, who were at or near the accident scene at the time of the accident, heard the train whistle. The jury clearly did not believe plaintiff on this issue. This issue is factual and depends largely on the credibility of the witnesses. Hebert v. Missouri Pa. R.R. Co., 366 So.2d 608 at 612 (La.App. 3d Cir.1978), writs ref.’d, 369 So.2d 153, 155 (La.1979). Under the appellate standard of review for manifest error in factual determinations, as set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989), and more recently in Stobart v. State, DOTD, 617 So.2d 880 (La.1993), as well as in Succession of Theriot v. Southern Pa. Trans. Co., 560 So.2d 861 (LaApp. 3d Cir.), writs denied, 565 So.2d 451, 453, 454 (La.1990), we find no manifest error in the trial court’s implicit determination that the train crew did properly sound the train’s whistle prior to reaching the crossing. See also, Hymel v. Texas & *64 New Orleans R.R. Co., 145 So.2d 138 (La. App. 4th Cir.1962).
SIGHT OBSTRUCTION
Appellants further argue that the presence of an old depot building, located twenty-one to twenty-two feet south of the closest rail of the tracks and twenty-four feet from the highway in the southeast corner of the intersection, was an obstruction which significantly impaired a northbound motorist’s view of a train approaching from the east. The building is owned by Union Pacific and is mostly in disuse.
Appellants would impose liability on Union Pacific under LSA-C.C. art. 2317, as the owner of the building. In order to come within the purview of Article 2317, the appellants must prove that the budding or its appurtenances posed an unreasonable risk of injury to others and that the damage occurred because of this risk of harm. Thomas v. Missouri Pa. R.R. Co., 466 So.2d 1280 (La.1985).
Plaintiffs presented the testimony of Duaine Evans, an accident reconstruction expert. Evans concluded that, although the building does create a significant visual obstruction to northbound motorists of any westbound train, the automatic signal lights at the crossing are adequate to warn motorists of approaching trains. In the opinion of 'plaintiffs’ own expert, the hazard created by the building was rendered insignificant, or minimal, by the automatic signals.
The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990).
In light of the expert testimony and evidence presented, we cannot conclude that the jury clearly erred in failing to find that the old depot building created an unreasonable risk of harm to others which would render Union Pacific liable for the accident. Contrast, Lee v. Missouri Pa. R.R. Co., 540 So.2d 287 (La.1989).
SIGNAL LIGHT MALFUNCTION
Finally, plaintiffs argue that the trial court erred in failing to find that the automatic warning lights at the railroad crossing were malfunctioning at the time of the accident. Union Pacific conceded that it has legal responsibility for maintenance of the signal lights. The testimony was divided and conflicting on the issue of malfunction. Several witnesses, including Donald Johnson, testified that the lights were malfunctioning in that they were not on at all or were very dim or were flashing in a very irregular fashion. They also testified that the lights had malfunctioned often prior to this accident. Several other witnesses testified that the lights were functioning properly and were clearly visible at the time of the accident.
Testimony was also adduced about the built in “fail safe” mode for malfunctioning signal lights. Duaine Evans, plaintiffs accident reconstruction expert, John H. Laugh-Iin, defendants’ expert in railroad signal construction and maintenance, and Clyde R. Welch, Union Pacific’s employee in charge of signal maintenance in the area of the accident, all testified that the signal lights are designed to flash continuously if there is a malfunction, thus ensuring that motorists are warned to proceed with caution.
In Rosell v. ESCO, supra at 844, the supreme court stated that the appellate standard of review in such a situation as this case presents is as follows, “It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong,’ and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as rea-sonable_ In applying the manifestly erroneous—clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.”
In this case, the jury clearly gave more credibility to the witnesses who testified that the signal lights were functioning properly at *65 the time of the accident. Given the extreme conflict in the testimony on this issue, we cannot find that this conclusion is unreasonable.
CONCLUSION
The issues presented in this appeal have been solely factual. After a thorough review of the evidence, we have found no manifest errors in the trial jury’s findings of fact. Therefore, the judgment of the trial court dismissing plaintiffs’ suit against the defendants, and likewise dismissing the intervention, is affirmed.
DISPOSITION
For the reasons given, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half to Donald and Tammy Johnson and one-half to Fielder Trucking, Inc.
AFFIRMED.

. There is little question that a substantial visual obstruction existed at the crossing where the accident happened. However, as will be explained later, signal lights at the site maintained by the railroad could have justified the jury in answering “no” to a jury interrogatory which read: “Was there an obstruction of view at this crossing creating an unreasonably dangerous condition which was a legal cause of this accident?”